## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AARON LEE JAMES, SR. and** | * | |
| **WILLIE MAE JAMES** | * | |
| **Plaintiffs,** | * | **Case No. 14-545** |
| | * | |
| **vs.** | * | |
| | * | |
| **NATIONSTAR MORTGAGE, LLC;** | * | **JURY TRIAL REQUESTED** |
| **FEDERAL NATIONAL MORTGAGE** | * | |
| **ASSOCIATION** | * | |
| **Defendants.** | * | |

### COMPLAINT

**NOW COME** Plaintiffs Aaron Lee James and Willie Mae James and as their Complaint against

the above-named Defendants aver as follows:

### PRELIMINARY STATEMENT

This action arises from the Defendants' acts and omissions regard the Plaintiffs' home mortgage

loan.  At all relevant times, Nationstar serviced the loan as agent for and on behalf of Federal National

Mortgage Association, which claims to be the owner of the loan.  Specifically, Defendants have failed to

properly credit Plaintiffs' mortgage payments, have falsely held Plaintiffs in default and have threatened

foreclosure without a basis for doing so.  Also, Nationstar has failed to comply with federal law by failing

to investigate and correct its servicing error and provide certain requested information.  Nationstar has also

violated Federal law regarding debt collection. Defendants' failure to properly apply payments received

is a breach of the loan documents and also a violation of federal law.  Plaintiffs seek damages and attorneys

fees for multiple violations of the  Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*

("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA") and the Truth in Lending

Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"). Plaintiffs also seek damages for breach of the mortgage and note and various other common law claims.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1640, 15 U.S.C. 1692k and 12 U.S.C. § 2617.

2.      Venue is proper here because the events giving rise to Plaintiffs' causes of action occurred in this district.

## THE PARTIES

3.      Plaintiffs are adult residents of Mobile County, Alabama.

4.      Defendant Federal National Mortgage Association ("Fannie Mae"), is a corporation formed outside the State of Alabama. At all relevant times it owned or claimed to own Plaintiffs' mortgage loan and the servicing of that mortgage was performed, in all material aspects, on Fannie Mae's behalf by its agent, Nationstar Mortgage, LLC.

5.      Defendant Nationstar Mortgage, LLC ("Nationstar") is a corporation formed in the State of Delaware, with its principal place of business in Texas.

## FACTUAL ALLEGATIONS

6.      On September 24, 2004 Aaron and Willie Mae James entered into a mortgage loan with Homecomings Financial Network Inc. in the amount of $63,000.00. The interest rate on the loan is fixed at 6.375 percent, rendering a monthly principal and interest payment of $711.35. The loan is secured by a mortgage on Mr. and Mrs. James' home located at 7363 Elmo Avenue, Theodore, Alabama. This has been their home for over thirty years.

2

7.     Mr. James is in the construction business and his earnings are the primary source of the family's income. That income dropped substantially after the economic slowdown in 2009 and the Jameses' struggled to pay their bills. On June 18, 2011 Mr. James filed a Chapter 13 bankruptcy.

8.     Upon information and belief, the servicing rights to Mr. James' loan were transferred to Nationstar in January 2009. At the time the servicing rights were transferred to Nationstar, the loan was considered by the lender to be in default.

9.     On June 30, 2011 Nationstar filed a Proof of Claim in Mr. James' bankruptcy for arrearage it claimed was owed on the mortgage. Nationstar claimed the loan was due for the December 2009 payment and filed its claim for 19 months of arrearage and fees for a total of $16,107.88. That claimed arrearage was placed in Mr. James' bankruptcy plan and paid through the bankruptcy trustee.

10.    On or about December 15, 2011, Nationstar filed a Motion for Relief from Stay in the Bankruptcy Court claiming that Mr. James missed his payments for October, November and December 2011. The total claimed post-petition arrearage, including fees, was $2,654.55.

11.    On January 19, 2012, the Bankruptcy Court entered conditionally denied Nationstar's Motion for Relief from Stay. The Court ordered that a post-petition arrearage amount of $4,128.57 be added to the plan. This represented payments due from October 2011 through January 2012. On March 20, 2012, Nationstar filed a claim in the amount of this post-petition arrearage and Mr. James began paying that arrearage as part of his bankruptcy plan. Upon information and belief, this arrearage has been paid in full.

3

12.     The Court's January 19th Order also stated that Nationstar was prohibited from taking

any foreclosure action unless there was a future default, Nationstar provided written notice of the

default and the default continued after a 15-day opportunity to cure.

13.     Mr. James continued to make his regular monthly payments and his chapter 13

payments, which included payment of the pre-petition and post-petition arrearage which Nationstar

claimed was owed.

14.     By letter dated November 22, 2013, Nationstar notified Mr. James that he had was

eleven months behind on his mortgage.  The letter stated as follows:

> You have not made payments on your loan since 12/01/2012. You are now due for
> all payments from and including that date. The failure to make these payments is a
> default under the terms and conditions of the mortgage loan.  As of the date of this
> letter, total monthly payments (including principal, interest, and escrow, if
> applicable), late fees, NSF fees, and other fees and advances due under the terms of
> the loan documents are past due in the amount of **$11,982.32**. In order to cure this
> default, you must pay the total amount due of **$11,982.32** in addition to other
> amounts that become due from the date of this letter through the date you pay.
>
> *     *     *
>
> **$11,982.32** must be paid by **12/27/2013** (or if said date falls on a Saturday, Sunday,
> or legal holiday, then on the first business day thereafter) in order to cure the default.
>
> *     *     *
>
> Failure to pay **$11,982.32** by **12/27/2013** (or if said date falls on a Saturday, Sunday,
> or legal holiday, then on the first business day thereafter), may result in acceleration
> of the sums secured by the Security Instrument, foreclosure proceedings and sale of
> the property.

(A copy of this letter is attached hereto as Exhibit "A")(Bolds appear in original).

15.     The statements in the letter that no payments had been made since December 2012

and that the nearly $12,000 in arrearage owed were false and Nationstar knew they were false at the

time it wrote the letter.  In fact, Nationstar's own records showed that the James had made at least

4

28 regular payments of principal and interest between January 19, 2012 and November 22, 2013. Those records also show that payments were made for each month since December 2012, contrary to the statements in Nationstar default letter. Those payments were made in addition to the money Nationstar received through the bankruptcy trustee.

16.     At the time the November 22 letter was written, Nationstar knew that Mr. James was represented by a lawyer. Nevertheless, the letter was sent directly to Mr. James.

17.     This letter, which absolute terms accused the Jameses of failing to make nearly 12 months of payments and demanded nearly $12,000.00 in lump sum or face foreclosure, caused extreme stress, worry and fear of losing their home. The Jameses had made loan payments during that period of time, although it was a financial struggle for them to do so. This letter conveyed the message that no matter how hard they tried and how regular their payments, Nationstar nevertheless fully intended to take their home.

18.     After receiving the November 22nd letter, Mr. James called Nationstar to explain that they were not behind in their payments and that the letter was false. Mr. James spoke with a Nationstar representative who insisted that no payments had been made in nearly a year and explained that Jameses' home was in foreclosure. James was directed to the collections department to discuss payments, but he was placed on indefinite hold and was never able to speak to anyone.

19.     On January 16, 2014, Mr. James sent Nationstar a letter explaining that the November 22nd letter was false and requesting that Nationstar research the issue and correct its records. The letter also requested information and documents regarding the payment history of the

loan and other aspects of the servicing of the loan. (A copy of the January 16th letter is attached hereto as Exhibit "B"[1]).

20.    Mr. James' January 16, 2014 letter constitutes a "qualified written request" ("QWR") and a "notice of servicing error" ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

21.    Nationstar responded to by letter dated February 3, 2014. (A copy of this letter (without enclosures) is attached hereto as Exhibit "C"). In its letter, Nationstar thanked Mr. James for bringing "this to our attention, as we take all matters such as this seriously." That statement was followed by boilerplate objections which had no relevance to Mr. James' specific dispute. Nationstar stated that the information requested "does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or his considered proprietary and confidential. Therefore, this information is considered outside of the scope of information that must be provided." That statement mischaracterizes Mr. James' letter and could not be based on any reasonable interpretation of that letter. Each of the three items of information requested by Mr. James relates directly to the servicing of his loan (payment history, statement of missed payments and identity of the lender). Moreover, James' letter unambiguously states his belief that Nationstar failed to recognize payments made December 2012.

22.    Upon information and belief, Nationstar uses this standard objection regardless of the specificity of the individual request. As stated below, this is part of a pattern and practice of

---

[1]The original letter contained the full account number associated with the Jameses' mortgage loan. Pursuant to Rule 5.2(a), *Federal Rules of Civil Procedure*, the full account number has been redacted from the copy filed with this Complaint.

formulaic, non-responsive information in response to borrowers' qualified written requests and notices of servicing errors.

23.    Although Mr. James did not ask for a copy of the promissory note and mortgage, Nationstar attached a copy to its response. Nationstar also attached a copy of the most recent statement and a payoff statement. Again, Mr. James did not ask for these documents. Upon information and belief Nationstar's practice is to provide the note and security instrument and request any qualified written request regardless of the specific information or documents requested.

24.    Nationstar provided a payment history which only dated back to March 2008. This is not what was requested. Upon information and belief, Nationstar as a matter of course only provides payment history in response to the such request covering the period of time in which it serviced the loan.

25.    The only information which was requested that was provided by Nationstar was the identity of the lender.

26.    Most importantly, Nationstar took no reasonable measures to correct the error identified in Mr. James' letter. Nationstar states in its response that "[u]pon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriate to its status. Furthermore, the payment history appears to be reported accurately to the main credit repositories. If you have documentation that substantiates that any of the information supported by Nationstar on the credit report is incorrect, please provide the detailed information for review. As of the date of this correspondence, the

account is approximately 14 days delinquent and contractually next due for the January 1, 2013 monthly installment."

27.     This statement is false. The payment history Nationstar provided with its response letter establishes that the November 22nd default letter was false. A simple review of that payment history would show that it is grossly in error and fails to account for the fact that pre-petition and post-petition had been added to Mr. James' and is not owed. Those records also plainly show that monthly payments were received for each month since the Bankruptcy Court's January 2012 Order which brought the loan current.

28.     Mr. James filed his bankruptcy on June 10, 2011. Nationstar's payment history shows that at that time the loan was due for December 2009 payment. This is consistent with the Proof of Claim Nationstar filed in Mr. James' bankruptcy on June 30, 2011 which sought 19 principal and interest payments covering December 2009 through June 2011. That claim was approved and has been paid as part of Mr. James' bankruptcy. Never the less, Nationstar applied post-petition payments to the pre-petition arrearage – essentially paying itself twice. At no point has Nationstar updated its payment history to reflect that fact that has been paid the pre-petition arrearage through the bankruptcy claim. Moreover, Nationstar acted on its false payment records when it sent the November 22nd letter threatening foreclosure and demanding nearly $12,000 in lump sum, knowing that the Jameses did not owe that money.

29.     At the time of Mr. James' January 16, 2014 letter, Nationstar's payment history erroneously reflected that the loan was due for January 2013. Nationstar knew this was incorrect and any reasonable review of Nationstar's own records would have confirmed the error and that correction was appropriate.

30.     Since responding to Mr. James' Notice of Error, Nationstar has continued to demand payment for the months beginning January 2012, even though it has already received those payments. In the meantime, Mr. James continued to send in his monthly payments of principal, interest and escrow.  On April 10, 2014, Nationstar returned two payments, one for $940.00 and the other one for $930.00) and refused to apply those to Mr. James' loan.

31.     Since receipt of James' January 16th letter, Nationstar has reported false and derogatory information to consumer reporting agencies regarding the status of the Jameses' loan.

32.     Nationstar engages in a pattern and practice of improperly responding to notices and requests from borrowers provided pursuant to RESPA Section 2605.  Part of this practice is to use the standardize form-based response letters, like the one used to respond to Mr. James' request, which contain boilerplate objections that are not tailored to the specificity of the individual request. It is also Nationstar's practice is to provide basic loan documents,  regardless of whether they were requested or are relevant to the specific request.   These documents include a copy of the promissory note and mortgage. Nationstar has also engaged in a pattern and practice of failing to conduct any reasonable investigation of the error included in the borrower's notice, and continuing to report false information to credit bureaus after receipt of a Notice of Error.

33.     On at least five separate occasions, including the Jameses' case, Nationstar has used the same generic form letters to respond to qualified written requests and notices of servicing errors. These form letter were sent borrowers in Birmingham, Alabama; Mobile, Alabama and Lexington, Maryland.  In each situation, Nationstar's form and generic response failed to address the specific issues addressed in the borrower's letter and violated RESPA Section 2605(e).  Upon information and belief, Nationstar's practice of providing form, generic and non-responsive letters in response to qualified written requests extends well beyond these five cases.

9

## COUNT I
### (BREACH OF MORTGAGE AND NOTE)

34.   The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

35.   The acts and omissions made by Defendants, as alleged herein, constitute a breach of the mortgage agreement and note.  These acts and omissions include, but are not limited to, the failure to apply payments tendered by Plaintiffs in accordance with the promissory note and mortgage.  In addition to violating the express provisions of the mortgage, Defendants violated the implied duty of good faith and fair dealing.

36.   The acts and omissions taken by Nationstar were made on Fannie Mae's behalf and it is liable for Nationstar's acts and omissions.   In addition to acting as Fannie Mae's servicing agent, Nationstar was assigned the mortgage and is a party to that instrument.

37.   Plaintiffs have suffered damage as a proximate result of the said breach.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Nationstar and Fannie Mae for breach of the mortgage and note, and award them compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT II
### (VIOLATIONS OF RESPA)

38.   The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

10

39.     Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of her loan. That provision and its implementing regulations also grant borrowers the right to submit a "notice of servicing error" ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

40.     A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

41.     Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau in 2013 promulgated new regulations which clarified the borrower's rights to have errors corrected and the servicer's duties in responding to a notice of servicing error. 12 C.F.R. § 1024.35. These new regulations became effective January 10, 2014.

42.     Under Section 2605(e) and the implementing regulations, servicers must take the following actions upon receipt of a QWR and/or NOE:

> -Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;
>
> -Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide a the borrower with written explanation of the corrections made, the effective date of the correction and contact information for further assistance;
>
> -If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and

-If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

43.    In addition to these requirements, the 2010 amendments to RESPA added additional

"servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

-Obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance. 12 U.S.C. § 2605(k)(A);

-Charge fees for responding to valid qualified written requests or notices of servicing errors. 12 U.S.C. § 2605(k)(B);

-Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);

-Fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan. 12 U.S.C. § 2605(k)(D); or

-Fail to comply with any other obligation imposed under the implementing regulations. 12 U.S.C. § 2605(k)(E)

12 U.S.C.A. § 2605(k)

44.    Plaintiffs' mortgage is a "federally related mortgage loan" within the meaning of 12

U.S.C. § 2602(1).

45.    Defendant Nationstar is a "servicer" with respect to Plaintiffs' loan as that term is

defined in 12 U.S.C. § 2605(i)(2).

46.    Mr. James' January 16, 2014 letter constitutes a "qualified written request" ("QWR")

and a "notice of servicing error" ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R.

§ 1024.35.

47.    Nationstar has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWR

and NOE as required under that section and Reg. X. Specifically, Nationstar failed to conduct any

12

reasonable investigation of the errors described in Plaintiffs' letter and failed to refund monies wrongfully collected. Nationstar also continued to report false and derogatory information to consumer reporting agencies after receipt of the notice of error. This is also a violation of Section 2605(e) and its implementing regulations.

48.     Nationstar has also violated 12 U.S.C. § 2605(k) in at least the following ways:

-Failing to take timely action to respond to Plaintiffs' notice of servicing error; and

-Failing to comply with the requirements set out in Reg. X regarding responding to a QWR and a NOE, conducting an investigation of servicing errors and correcting errors.

49.     Plaintiffs have suffered actual damages as a proximate result of Nationstar's failure to comply with Section 2605(e).

50.     As alleged herein, Nationstar has engaged in a pattern and practice of acts and omissions which violate Section 2605(e) sufficient to allow recovery of statutory damages under Section 2605(f).

**WHEREFORE**, Plaintiffs request that this Court enter a judgment against Nationstar for each violation of RESPA, awarding the following relief:

A.     Statutory and actual damages as provided in  12 U.S.C. § 2605(f);

B.     Reasonable attorney's fees, and costs expended in this proceeding; and

C.     Such other and further relief as the Court may deem just and proper.


## COUNT III
## (FDCPA VIOLATIONS)

51.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

13

52.     This is a claim against Defendant Nationstar for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA").

53.     Defendant Nationstar is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Nationstar uses interstate commerce and the mails in its business as mortgage servicer, the principal purpose of which is the collection of debt. Also, Nationstar regularly collects or attempts to collect debt owed or due or asserted to be owed or due to investors on whose behalf Nationstar services mortgages. Nationstar has attempted to collect a debt which is it claimed was owed to another. Also, Nationstar obtained the debt and/or servicings rights with respect to Plaintiffs' loan after the loan was considered by the creditor to be in default.

54.     The alleged mortgage-related debt which Nationstar attempted to collect from Plaintiffs is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5).

55.     Plaintiffs are each "consumers" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3).

56.     Nationstar has violated the FDCPA in connection with its collection attempts against Plaintiffs. Nationstar's violations include, but are not limited to, the following:

    A.    Attempting to collect amounts which are not authorized by any contract or permitted by law. This is a violation of 15 U.S.C. § 1692f(1);

    B.    Attempting to collect a debt by use of false, deceptive and/or misleading statements aimed at coercing the Plaintiffs to pay the debt in violation of 15 U.S.C. § 1692e;

    C.    Communicating to any person, including credit bureaus, credit information which is known or which should be known to be false in violation of 15 U.S.C. § 1692e(8);

    D.    Communicating directly with a consumer who is represented by an attorney. This is a violation of 15 U.S.C. 1692c(a)(2); and

    E.    Taking or threatening to take non-judicial foreclosure action without any legal right to do so. This is a violation of 15 U.S.C. 1692f(6).

57.    The actions taken by Nationstar in violation of the FDCPA occurred within one year of the filing prior to this action.

58.    Plaintiffs have suffered actual damages as a proximate result of Nationstar's FDCPA violations.

59.    As a result of its violations of the FDCPA, Nationstar is liable to Plaintiffs for compensatory damages, statutory damages, costs and attorneys fee.

**WHEREFORE,** Plaintiffs respectfully request that judgment be entered against Defendant Nationstar for the following:

A.    Actual damages;

B.    Statutory damages pursuant to 15 U.S.C. 1692k;

C.    Costs and reasonable attorneys fees pursuant to 15 U.S.C. § 1692k; and

D.    Such other and further relief as this Court deems just and proper, the premises considered.

## COUNT IV
## (VIOLATION OF THE TRUTH IN LENDING ACT)

60.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

61.    This count asserts a claim under the Truth in Lending Act ,15 U.S.C. § 1600 - 1666 ("TILA")

62.    Fannie Mae, as creditor, was required by 15 U.S.C. § 1639f to promptly and accurately credit the Plaintiffs' account with the payments received.  It has failed to do so.

63.    Plaintiff has suffered damages as a result of Fannie Mae's TILA violation.

15

WHEREFORE, Plaintiffs request that this Court enter judgment against Fannie Mae for its violations of TILA and award Plaintiffs statutory damages, compensatory damages, attorneys fees and costs. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT V
### (WANTONNESS)

64.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

65.     The acts and omissions alleged herein by Defendants constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiffs' rights and welfare.

66.     Defendants have also wantonly hired, trained and supervised its employees and agents.

67.     The acts and omissions taken by Defendant Nationstar were made on Fannie Mae's behalf as agent and Fannie Mae is liable for Nationstar's tortuous acts and omissions.

68.     Plaintiffs have suffered damage as a proximate result of the said wantonness.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants for wantonness and award Plaintiffs compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

16

## COUNT VI
## (NEGLIGENCE)

69.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

70.     The acts and omissions alleged herein by Defendants constitute negligence.

71.     Defendants also negligently hired, trained and supervised its employees.

72.      The acts and omissions taken by Nationstar were made on Fannie Mae's behalf as agent and Fannie Mae is liable for Nationstar tortuous acts and omissions.

73.     Plaintiffs have suffered damage as a proximate result of the said negligence.

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants negligence and award Plaintiffs compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN**

KENNETH J. RIEMER (RIEMK8712)
Underwood & Riemer, P.C.
Attorney for Plaintiffs
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
kjr@alaconsumerlaw.com

17

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

Nationstar Mortgage, LLC
c/o CSC Lawyers Incorporation SVC Inc
150 S. Perry Street
Montgomery, AL 36104

Federal National Mortgage Association
3900 Wisconsin Avenue, NW
Washington, DC 20016-2892