**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AARON LEE JAMES, SR. and** | * | |
| **WILLIE MAE JAMES** | * | |
|     **Plaintiffs,** | * | **Case No. 14-545-WS-N** |
| | * | |
| **vs.** | * | |
| | * | |
| **NATIONSTAR MORTGAGE, LLC;** | * | |
| **FEDERAL NATIONAL MORTGAGE** | * | |
| **ASSOCIATION** | * | |
|     **Defendants.** | * | |

_____

## RESPONSE TO MOTION TO DISMISS COMPLAINT
_____

**COME NOW** Plaintiffs Aaron and Willie Mae James and in response to the Defendants Motion to Dismiss (Doc. 6), state that the motion is due to be denied because the Complaint adequately states a claim for relief. In further opposition to the Motion to Dismiss, Plaintiff submits the following Memorandum:

### FACTS AS ALLEGED IN THE COMPLAINT

On September 24, 2004 the Jameses entered into a mortgage loan with Homecomings Financial Network Inc. in the amount of $63,000.00. The loan is secured by a mortgage on Mr. and Mrs. James' home located at 7363 Elmo Avenue, Theodore, Alabama. This has been their home for over thirty years. (Complaint (Doc. 1), ¶ 6).

Mr. James' construction business suffered after the economic slowdown in 2008 and the Jameses' struggled to pay their bills. The servicing rights to the Jameses' loan were transferred to Nationstar in January 2009. By this time, the loan was considered by the lender to be in default. On June 18, 2011 Mr. James filed a Chapter 13 bankruptcy. (Id., ¶ 7-8).

On June 30, 2011 Nationstar filed a Proof of Claim in Mr. James' bankruptcy for arrearage

it claimed was owed on the mortgage. Nationstar claimed the loan was due for the December 2009 payment and filed its claim for 19 months of arrearage and fees for a total of $16,107.88.   That claimed arrearage was placed in Mr. James' bankruptcy plan and paid through the bankruptcy trustee. (Id., ¶9 ).

On December 15, 2011, Nationstar filed a Motion for Relief from Stay in the Bankruptcy Court claiming that Mr. James missed his payments for October, November and December 2011. The total claimed post-petition arrearage, including fees, was $2,654.55. (Id., ¶ 10).

On January 19, 2012, the Bankruptcy Court entered conditionally denied Nationstar's Motion for Relief from Stay.  The Court ordered that a post-petition arrearage amount of $4,128.57 be added to the plan. This represented payments due from October 2011 through January 2012.  On March 20, 2012, Nationstar filed a claim in the amount of this post-petition arrearage and Mr. James began paying that arrearage as part of his bankruptcy plan.  This arrearage has been paid in full.  (Id., ¶ 11).

The Jameses continued to make regular monthly mortgage payments and the required Chapter 13 payments, which included payment of the pre-petition and post-petition arrearage which Nationstar claimed was owed. (Id., ¶ 13)

On November 22, 2013, Nationstar sent Mr. James a demand letter stating that he had was eleven (11) months behind on his mortgage.  The letter stated as follows:

> You have not made payments on your loan since 12/01/2012. You are now due for all payments from and including that date. The failure to make these payments is a default under the terms and conditions of the mortgage loan.  As of the date of this letter, total monthly payments (including principal, interest, and escrow, if applicable), late fees, NSF fees, and other fees and advances due under the terms of the loan documents are past due in the amount of **$11,982.32**. In order to cure this default, you must pay the total amount due of **$11,982.32** in addition to other amounts that become due from the date of this letter through the date you pay.
>
> *      *      *
>
> **$11,982.32** must be paid by **12/27/2013** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter) in order to cure the default.

                                    *      *      *

Failure to pay **$11,982.32** by **12/27/2013** (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter), may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property.

(Id., ¶ 14)(A copy of this letter is attached to the Complaint as Exhibit "A")(Bolds appear in original).

The statements in the letter were false and Nationstar knew they were false at the time it wrote the letter.  In fact, Nationstar's own records showed that the James had made at least 28 regular payments of principal and interest between January 19, 2012 and November 22, 2013.  Those records also show that payments were made for each month since December 2012, contrary to the statements in Nationstar default letter.  Those payments were made in addition to the money Nationstar received through the bankruptcy trustee.  (Id., ¶ 15).

This letter, which absolute terms accused the Jameses of failing to make nearly 12 months of payments and demanded  nearly $12,000.00 in lump sum or face foreclosure, caused extreme stress, worry and fear of losing their home.  The Jameses had made loan payments during that period of time, although it was a financial struggle for them to do so.  This letter conveyed the message that no matter how hard they tried and how regular their payments, Nationstar nevertheless fully intended to take their home. (Id., ¶ 18).

On January 16, 2014, after failing to resolve the issue through calls to Nationstar,  Mr. James sent Nationstar a letter explaining that the November 22nd letter was false and requesting that Nationstar research the issue and correct its records.  The letter also requested information and documents regarding the payment history of the loan and other aspects of the servicing of the loan. ( That letter is attached to the Complaint as Exhibit "B"). (Id., ¶19 ).  Mr. James' January 16, 2014 letter constitutes a "qualified written request" ("QWR") and a "notice of servicing error" ("NOE")

3

within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35. (Id., ¶20).

Nationstar responded to by letter dated February 3, 2014.  (A copy of that letter (without enclosures)  is attached to the Complaint as Exhibit "C").    In its letter, Nationstar thanked Mr. James for bringing "this to our attention, as we take all matters such as this seriously."  That statement was followed by boilerplate objections which had no relevance to Mr. James' specific dispute.  Nationstar stated that the information requested  "does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or his considered proprietary and confidential.  Therefore, this information is considered outside of the scope of information that must be provided."  That statement mischaracterizes Mr. James' letter and could not be based on any reasonable interpretation of that letter.   Each of the three items of information requested by Mr. James relates directly to the servicing of his loan (payment history, statement of missed payments and identity of the lender).  Moreover, James' letter unambiguously states his belief that Nationstar failed to recognize payments made December 2012. (Id., ¶ 21).

Nationstar uses this standard objection regardless of the specificity of the individual request. As stated below, this is part of a pattern and practice of formulaic, non-responsive information in response to borrowers' qualified written requests and notices of servicing errors. (Id., ¶22 ).

Although Mr. James did not ask for a copy of the promissory note and mortgage, Nationstar attached a copy to its response.  Nationstar also attached a copy of the most recent statement and a payoff statement.  Again, Mr. James did not ask for these documents.   Nationstar's practice is to provide the note and security instrument and request any qualified written request regardless of the specific information or documents requested. (Id., ¶ 23).

Nationstar provided a payment history which only dated back to March 2008. This is not what was requested.  Nationstar as a matter of course only provides payment history in response to

the such request covering the period of time in which it serviced the loan. (Id., ¶ 24).  The only information which was requested that was provided by Nationstar was the identity of the lender. (Id., ¶ 25).

Nationstar took no reasonable measures to correct the error identified in Mr. James' letter. Nationstar states in its response that "[u]pon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them.  As such, the above-mentioned loan account will continue to be serviced appropriate to its status.  Furthermore, the payment history appears to be reported accurately to the main credit repositories.  If you have documentation that substantiates that any of the information supported by Nationstar on the credit report is incorrect, please provide the detailed information for review.  As of the date of this correspondence, the account is approximately 14 days delinquent and contractually next due for the January 1, 2013 monthly installment." (Id., ¶ 26).  This statement is false.  The payment history Nationstar provided with its response letter establishes that the November 22nd default letter was false.  A simple review of that payment history would show that it is grossly in error and fails to account for the fact that pre-petition and post-petition had been added to Mr. James' and is not owed.  Those records also plainly show that monthly payments were received for each month since the Bankruptcy Court's January 2012 Order which brought the loan current. (Id., ¶27 ).

Nationstar's payment history shows that at that time Mr. James filed his bankruptcy the loan was due for December 2009 payment.  This is consistent with the Proof of Claim Nationstar filed in Mr. James' bankruptcy on June 30, 2011 which sought 19 principal and interest payments covering December 2009 through June 2011.  That claim was approved and has been paid as part of Mr. James' bankruptcy.  Nevertheless, Nationstar applied post-petition payments to the pre-

petition arrearage – essentially paying itself twice.  At no point has Nationstar updated its payment history to reflect that fact that has been paid the pre-petition arrearage through the bankruptcy claim. Moreover, Nationstar acted on its false payment records when it sent the November 22nd letter threatening foreclosure and demanding nearly $12,000 in lump sum, knowing that the Jameses did not owe that money.   (Id., ¶28).

At the time of Mr. James' January 16, 2014 letter, Nationstar's payment history erroneously reflected that the loan was due for January 2013.  This is a result of Nationstar's failure to update its records to reflect the true legal status of the debt.  Nationstar knew this was incorrect and any reasonable review of Nationstar's own records would have confirmed the error and that correction was appropriate. (Id., ¶ 29).

Since responding to Mr. James' Notice of Error, Nationstar has continued to demand payment for the months beginning January 2012, even though it has already received those payments.  In the meantime, Mr. James continued to send in his monthly payments of principal, interest and escrow.  On April 10, 2014, Nationstar returned two payments, one for $940.00 and the other one for $930.00) and refused to apply those to Mr. James' loan. (Id., ¶30 ).

Nationstar engages in a pattern and practice of improperly responding to notices and requests from borrowers provided pursuant to RESPA Section 2605.  Part of this practice is to use the standardize form-based response letters, like the one used to respond to Mr. James' request, which contain boilerplate objections that are not tailored to the specificity of the individual request.  It is also Nationstar's practice is to provide basic loan documents,  regardless of whether they were requested or are relevant to the specific request.  These documents include a copy of the promissory note and mortgage. Nationstar has also engaged in a pattern and practice of failing to conduct any reasonable investigation of the error included in the borrower's notice, and continuing to report false

6

information to credit bureaus after receipt of a Notice of Error. (Id., ¶ 32).

On at least five separate occasions, including the Jameses' case, Nationstar has used the same generic form letters to respond to qualified written requests and notices of servicing errors. These form letter were sent borrowers in Birmingham, Alabama; Mobile, Alabama and Lexington, Maryland.  In each situation, Nationstar's form and generic response failed to address the specific issues addressed in the borrower's letter and violated RESPA Section 2605(e).  Upon information and belief, Nationstar's practice of providing form, generic and non-responsive letters in response to qualified written requests extends well beyond these five cases. (Id., ¶ 33).

## ARGUMENT

### A.   Pleading Requirements

The basic pleading requirements and standard of review under Rule 12(b)(6) are aptly summarized as follows:

> In most instances, the Federal Rules of Civil Procedure require only that the Complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Nevertheless, to survive a motion to dismiss, a Complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The Complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly,* 550 U.S. at 555, 557, 127 S.Ct. 1955. To be plausible on its face, the claim must contain enough facts that "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

> [On Motion to Dismiss under Rule 12(b)(6) ] [t]he court must construe pleadings broadly and resolve inferences in a plaintiff's favor. *Levine v. World Fin. Network Nat'l Bank,* 437 F.3d 1118, 1120 (11th Cir.2006). However, the court need not accept inferences that are unsupported by the facts asserted in the Complaint. *Snow v.*

> *DirecTV, Inc.,* 450 F.3d 1314, 1320 (11th Cir.2006). Ultimately, the well-pleaded Complaint must present a reasonable inference from the facts it alleges that show a defendant is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215 (11th Cir.2012). To survive Defendants' Motion, the allegations of Plaintiffs' Complaints must permit the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal,* 129 S.Ct. at 1949.

In re Blue Cross Blue Shield Antitrust Litig., 2014 WL 2767360 (N.D. Ala. June 18, 2014).

Twombly/Iqbal did not abolish notice pleading and does not require a "heightened fact pleading of specifics." Twombly, 550 U.S. at 570.  All that is required is to plead enough facts to state a claim to relief.  Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir.2007); Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of NY, 619 F. Supp. 2d 1178, 1182 (S.D. Ala. 2008).  The Supreme Court recently clarified that the Twombly and Iqbal standards do not countenance a "punctiliously stated 'theory of the pleadings.'" Johnson v. City of Shelby, Miss., 135 S. Ct. 346 (2014).  "Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."  Id.

**B**.     **Section 2605(e) Servicing Requirements**

RESPA was originally enacted for the purpose of ensuring consumers access to essential information regarding the terms and costs of their loan at origination. The statute was expanded in 1992 to cover certain servicing issues. This included Section 2605(e) which gives a borrower the right to submit a written request for information and request for correction of servicing errors.  The servicer's duty to respond to the inquiry is set out as follows:

(e) Duty of loan servicer to respond to borrower inquiries
(1) Notice of receipt of inquiry
(A) In general
    If any servicer of a federally related mortgage loan receives a Qualified Written Request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
        *        *        *
(2) Action with respect to inquiry
    Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any Qualified Written Request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

    (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

    (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

        (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

        (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

    (C) after conducting an investigation, provide the borrower with a written explanation

9

or clarification that includes--

> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*    *    *

12 U.S.C. § 2605(e).

In addition to the Section 2605(e) requirements, RESPA was amended in 2010 to add additional "servicer prohibitions." 12 U.S.C. § 2605(k). This provision renders it a separate violation to "[f]ail to take timely action to respond to a borrower's Notice of Servicing Error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(C). The servicer also violates this Section if it "[f]ail(s) to comply with any other obligation imposed under the implementing regulations." 12 U.S.C. § 2605(k)(E).

In 2013, the Consumer Finance Protection Bureau promulgated new regulations clarifying the servicer's duty in responding to notices of servicing errors committed by borrowers pursuant to Section 2605(e). Those regulations became effective January 10, 2014. 12 C.F.R. § 1024.35. Those regulations clarify that a servicing error includes the "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law." 12 C.F.R. § 1024.35(b)(2). Also included as a servicing error is "[a]ny other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(5) and (11).

The regulations also clarify the servicer's duty to perform an adequate investigation of the borrower's claim that an error has occurred.

10

**(e) Response to notice of error.**

(1) *Investigation and response requirements.*

(i) *In general*. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1035(e).

## C.   Plaintiffs Adequately Pled Claim under Section 2605(e)

### 1.   That Nationstar Violated Section 2605

The Jameses adequately pled every element of their RESPA claim.  They allege that their loan is a "federally related mortgage loan;" that Mr. James' January 16th letter constitutes a "Qualified Written Request" and a "Notice of Servicing Error" within the meaning of 12 U.S.C. § 2605(e) and the implementing regulations; and that Nationstar  has violated  12 U.S.C. § 2605(e) by failing to properly respond to Plaintiff's QWR and NOE.  (Complaint, ¶¶ 44-47).  They also allege that Nationstar violated Section 2605(k) by failing to properly respond to the notice of servicing error and failing to comply with Reg. X's requirement that Nationstar conduct an investigation of the servicing errors and make all necessary corrections. (Id., ¶ 48).

These are not "bare bones" recitations.  They are supported by detailed factual allegations regarding the servicing errors the Jameses claim took place and Nationstar failure to correct those

errors and otherwise properly respond to Mr. James' inquiry.   (Id., ¶¶ 6-33).

Nationstar claims it was under no duty to properly investigate and correct its error, even if there was one. Nationstar argues that it discharges its duty under Section 2605(e) simply by stating that it did nothing wrong, regardless of the correctness of that position.  This flippant approach to a borrower's main, if not sole, means of correcting servicing errors flies in the face of the letter and spirit of RESPA and Reg. X.

Section 2605(e)(2) states that a servicer must either (1) "make appropriate corrections" and provide an explanation of the correction; (2) after *conducting a investigation*, provide an explanation of why the servicer determined the account is correct (along with a contact name); or (3) after conducting an investigation, provide an explanation as to why information requested in unavailable (and a contact name).  As alleged in the Complaint, Nationstar did none of these things.  It did not conduct an adequate investigation, it did not correct errors and it did not provide any meaningful explanation of why no correction was needed.  In fact, Nationstar never bothered to address James' specific error.  It simply restated its claim that the loan was 14 months in arrears.  To ignore a borrower's claim of a servicing error without investigation or any detailed explanation one way or the other is not an option. *See, e.g.*, Marais v. Chase Home Fin., LLC, — F.Supp.3d ——, 2014 WL 2515474, at *9 (S.D.Ohio June 4, 2014) (a response to an NOE which merely repeats incorrect information did not satisfy RESPA's requirements).  Such was the case before the new regulations, but now Reg. X makes plain that an actual investigation and correction of any errors which would be uncovered by an investigation is required.  The new regulation provides only two options for responding to a Notice of Servicing Error:

> (i) *In general*. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a *reasonable* investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1035(e)(emphasis added).[1]   These provision erase any doubt that Nationstar was required to conduct an adequate investigation and, if a reasonable investigation would reveal errors, then it was required to correct those errors.[2]

It is true that prior to the 2014 changes to Reg. X, there was some caselaw supporting the position that as long as the servicer timely responds and provides a reasonable explanation of its position, there is no liability, even if that position is wrong.  *See, e.g.*, Starkey v. JP Morgan Chase Bank, N.A., No. Civ.A. 13–694, 2013 WL 6669268, at *4 (S.D.Ohio Dec. 18, 2013), aff'd, 573 Fed.Appx. 444 (6th Cir.2014);  Vassalotti v. Wells Fargo Bank, N.A., 732 F.Supp.2d 503 (E.D.Pa.2010).  But that authority was rendered obsolete by the new Reg. X requirements which clarify the servicer's duty to conduct a reasonable investigation and correct any errors such an investigation would uncover.  An excellent discussion of this development and its impact is provided in Wilson v. Bank of Am., N.A., ---- F. Supp.3d----, 2014 WL 4744555 (E.D. Pa. Sept. 24, 2014):

---

[1]It has long been recognized that the regulatory authority granted in RESPA is broad and courts are bound to give effect to regulations promulgated pursuant to that authority.  Mourning v. Family Publ'n Serv., Inc., 411 U.S. 356, 369 (1972); Heimmermann v. First Union Mortgage Corp., 305 F.3d 1257, 1262 (11th Cir. 2002); Echevarria v. Chicago Title & Trust Co., 256 F.3d 623, 627 (7th Cir. 2001); Price v. Countrywide Home Loans, Inc., 2005 WL 2354348, at *7 (S.D. Ga. Sept. 26, 2005).

[2]Failure to comply with this provision, or any other aspect of Reg. X, is itself a violation of RESPA.  See  12 U.S.C. § 2605(k)(E).

In support of its position, Defendant relies on several pre-Regulation X cases. Prior to the enactment of Regulation X, courts held that "RESPA section 2605(e)(2)(B)(i) require[d] servicers to timely respond to borrowers' inquiries, and to provide 'a statement of the reasons for which the servicer believes the account of the borrower is correct.' It [did] not impose any other substantive duties." Starkey v. JP Morgan Chase Bank, N.A., No. Civ.A. 13–694, 2013 WL 6669268, at *4 (S.D.Ohio Dec. 18, 2013), aff'd, 573 Fed.Appx. 444 (6th Cir.2014). Thus, under the law, "RESPA [did] not impose a substantive duty on the servicer to correct Plaintiffs' account when the servicer ... explained its reasonable belief that its position is correct." Id. In Vassalotti v. Wells Fargo Bank, N.A., 732 F.Supp.2d 503 (E.D.Pa.2010)—a case relied on heavily by Defendant—the plaintiff brought a claim pursuant to RESPA, prior to the enactment of Regulation X, alleging that the defendant, Wells Fargo, had failed to respond to her written notice of error and request for information. Id. at 507. Defendant moved to dismiss under Rule 12(b)(6), alleging that the plaintiff's allegations failed to state a claim upon which relief may be granted. Id. Upon reviewing the exchange of correspondence between plaintiff, the borrower, and defendant, the servicer, the Court concluded that [Wells Fargo complied with Section 2605(e)]

\*        \*        \*

Although, at first blush, Starkey and Vassalotti would seem to suggest that Defendant has complied with its RESPA obligations, *this conclusion ignores the impact of the subsequently enacted Regulation X*. As noted above, pre-Regulation X statutory language required nothing more than "an investigation" and a "written explanation" that the servicer believes supports its determination that the account is correct. As such, the courts—including those in Vassalotti and Starkey—could correctly conclude that RESPA imposed mere procedural obligations to investigate and respond, without any substantive obligation to ensure that the investigation was reasonable and the response was thorough. *Regulation X, however, altered the landscape of those obligations. For example, in response to a Notice of Error, a servicer must now conduct a "reasonable investigation." The addition of the word "reasonable" seemingly imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement of reasons.*

Wilson, slip op., p. 15 (emphasis added). As the Wilson court further noted, the courts that have reviewed the impact of these relatively new rules have all come to the same conclusion. Friedman v. Maspeth Fed. Loan and Sav. Ass'n, ––– F.Supp.3d ––––, 2014 WL 3473407, at *9 (E.D.N.Y. July 14, 2014) ("Defendant responds that it complied with RESPA when it conducted an investigation, presented the requested information, and was not provided with the plaintiff's mail receipts in order to correct any errors.... Because plaintiff has now provided evidence plausibly demonstrating for purposes of pleading that defendant gave incorrect information, the complaint

states a valid claim under RESPA."); Marais v. Chase Home Fin., LLC, —— F.Supp.3d ——, ——, 2014 WL 2515474, at *9 (S.D.Ohio June 4, 2014) (a mere form response to Notice of Error and Request for Information which merely repeats incorrect information did not satisfy RESPA's requirements); Eveillard v. Nationstar Mortgage LLC, 2015 WL 127893, slip op., p. *7 (S.D. Fla. Jan. 8, 2015)(examining Nationstar's conclusion after investigation and finding it correct).

Here, Nationstar was presented with an alleged error which is easily confirmed or refuted by its own pay history. James stated his belief that Nationstar's statement regarding his failure to pay was false and that he had made his payments since that date.  As alleged in the Complaint, Nationstar's pay history clearly reflects not only that James had made his payments since November 2012, but also that Nationstar was improperly applying post-petition payments to pre-petition arrearage and had failed to acknowledge the true legal status of the debt.  (Complaint (Doc. 1), ¶¶ 28-29).  Nationstar's response does not address the specific error in any meaningful way. Nationstar merely re-sent the same pay history that confirms its error along with the conclusory and false statement that James had failed to made payments after November 2012.

Nationstar's response is essentially the same as the one addressed in Marais.  In that case the borrower complained that Chase failed to apply payments and charged certain improper fees.  Like Nationstar, Chase responded only by sending a form letter which failed to address the specific issues addressed.  It also provided basic loan documents (a copy of the note and mortgage and a payment history).  Chase made no corrections and failed to explain why it concluded that none were needed. Chase argued that this was adequate because the payment history provides information regarding the fees that were charged and the payments that were applied.  The court's rejection of that argument and discussion are relevant here:

It would, for instance, hardly be broad or liberal construction (as is required for remedial

statutes like RESPA) to say that a servicer, presented with a truthful allegation that an account was incorrect, could respond by providing information confirming the error (thereby plausibly meeting 12 U.S.C. § 2605(e)(2)(C)) but doing nothing about it. Nor would it make sense to allow a servicer to choose to explain a sham or unreasonable belief that the account is correct . . . rather than correcting the account pursuant to 12 U.S.C. § 2605(e)(2)(A).  Following a QWR, a company is to choose at least one of the disjunctive response options in 12 U.S.C. § 2605(e)(2) but common sense, plain language, and liberal construction dictate that it must choose the appropriate option under the circumstances.

              \*   \*   \*

Thus, when presented with Marais' QWR alleging that her account had incorrectly been assessed fees and that her payments had not been allocated correctly, Chase, pursuant to § 2605(e)(2)(A or B), ought to have had something to say about the matter—either justifying and explaining these anomalies or correcting them.

Marais, 2014 WL 2515474, slip op.  7-8. The court goes on to offer an  analogy which is equally apt

here:

[i]magine that you are dining in a restaurant and notice an apparent error on the bill. You question the waiter about the error and he, without comment or dialogue, simply returns with a new copy of the exact same bill. Would you feel you had received a "a written explanation or clarification" or that the waiter had "conduct[ed] an investigation" into the alleged error? . . . What Chase has done here is no different.

Marais, 2014 WL 2515474, slip op. 9.

Nationstar likewise engaged in the same loop of non-responsive information presented by the

hypothetical waiter.

James: "I have made my payments since November 2012 and your are not properly applying them"

Nationstar:"Here is the payment history that shows you have made the payments we accuse you of missing and, by the way, we still say you are 14-months behind"

As in Marais, Nationstar's non-responsive and evasive answer is not sustainable under RESPA,

particularly in light of Reg. X.

Nationstar cites the Eleventh Circuit decision in Bates v. JPMorgan Chase Bank, NA, 768 F.3d

1126 (11th Cir. 2014), but that case is distinguishable on its facts.  The Bates court found that Chase

provided an adequate and detailed explanation of why it rejected <u>Bates</u>' payments.  <u>Id.</u> at 1134-35.

Here, the Jameses alleges that no adequate explanation was provided and that Nationstar failed to

correct its error.  Another distinguishing aspect of <u>Bates</u> is that it the borrower inquiry predates the

new amendments to Reg. X which extinguish the notion that a servicer can comply with Section

2605(e) without conducting an adequate investigation or correcting actual errors.  <u>Wilson</u>, 2014 WL

4744555 (E.D. Pa. Sept. 24, 2014).

Uncorrected, a simple payment application error can lead to a false default, rejection of

payments by the servicer (under a false belief that there is a default), false reporting of a default and

ultimately a foreclosure. The whole point of Section 2605(e) and Reg. X is to allow a consumer to

avoid these results by alerting a mortgage servicer to its error so that it will be corrected.  Allowing

a servicer to dodge its RESPA obligation by simply refusing to acknowledge its error undermines

the remedial purpose behind this very important consumer right.

### 3.    The Jameses Properly Allege Actual Damages

A borrower may recover actual damages caused for a servicer's failure to comply with this

provision, plus statutory fees of up to $2,000, attorney fees and costs. 12 U.S.C. § 2605(e).  "Actual

damages" in the context of Section 2605(f) is to be liberally construed in order to effectuate

RESPA's broad remedial purpose.  <u>McLean v. GMAC Mortgage Corp.</u>, 398 F. App'x 467, 471 (11th

Cir. 2010).  Actual damages include any economic damages incurred as a result of a servicer's

failure to make correction.  *See e.g.*, <u>Marais v. Chase Home Fin. LLC</u>, 736 F.3d 711, 721 (6th Cir.

2013). The borrower may also recover non-pecuniary damages, including damages for emotional

distress.  <u>McLean.</u>, 398 F. App'x at  471;  <u>Marais</u>, 736 F.3d at 721; <u>Houston v. U.S. Bank Home</u>

<u>Mortgage Wisconsin Servicing</u>, 505 F. App'x 543, 548 (6th Cir. 2012); <u>Catalan v. GMAC Mortgage</u>

<u>Corp.</u>, 629 F.3d 676, 696 (7th Cir. 2011); <u>Rawlings v. Dovenmuehle Mortgage, Inc.</u>, 64 F. Supp. 2d

1156, 1166 (M.D. Ala. 1999).

The Complaint adequately pleads actual damages.  First, the Jameses alleged that Nationstar's insistence that they had not made payments since November 2012 "caused extreme stress, worry and fear of losing their home.  The Jameses had made loan payments during that period of time, although it was a financial struggle for them to do so.  This letter conveyed the message that no matter how hard they tried and how regular their payments, Nationstar nevertheless fully intended to take their home." (Complaint (Doc. 1), ¶ 17).  Mr. James sent the NOE in response to that letter but, as alleged in the Complaint, Nationstar refused to correct its error, restated its belief that the loan was 14 months in arrears and "continued to demand payment for the months beginning January 2012, even though it has already received those payments." (Id., ¶ 30).   The Jameses further allege that, as a result of its refusal to correct its records, Nationstar returned two payments, claiming (falsely) that the loan was in arrears. (Id.,).  This adequately alleges that Nationstar's refusal to correct its records has caused emotional distress.  Also, the failure to properly apply payments is actual damage because additional interest is accrued while those payments are held in suspense and not applied.  Finally, if payments were misapplied during the bankruptcy, as alleged, such that Nationstar was collecting twice for the same payment, a refund was in order and the failure to issue the refund is damage.  Because, as explained, Nationstar was required by Reg. X to correct the error (i.e., properly apply the payments, stop falsely declaring a default and issue a refund), those damages result directly from the RESPA violation.

### 5.    Pattern and Practice Allegations

Jameses's allegations regarding a pattern and practice of failing to comply with Section 2605(e) extended  well beyond "[m]erely mouthing the buzzwords 'pattern and practice.'"  Selman v. CitiMortgage, Inc., 2013 WL 838193, slip op. 9 (S.D. Ala. Mar. 5, 2013).  The Complaint alleges

that Nationstar's practice is to respond to specific borrower concerns regarding specific servicing errors with standardized, boilerplate responses which do not adequately address the issues raised by the borrower and routinely provide information and documents not requested.  Jameses also identified several other borrowers who received similar, non-complaint form letters.  (Doc. 24, ¶¶ 15-16).  This easily meets the fair notice pleading requirement.  There is no requirement to allege every detail about these other borrowers.  This will be a subject for discovery.  Jameses adequately pled a "pattern and practice" within the meaning of Section 2605(f).

**D.    Plaintiffs Properly Plead "Debt Collector" Status**

Nationstar' argument regarding its status as a "debt collector" under the FDCPA ignores the correct legal standard.  In applying the definition of "debt collector" to mortgage servicers, it is universally held that a servicer is a "debt collector" when it acquires the servicing of the loan after the loan is considered in default.  The law on this issue was comprehensively articulated by Magistrate Judge Cassady in a Report and Recommendation which was adopted by Judge DuBose last month.  Johns v. Wells Fargo Bank, N.A., No. CIV.A. 14 0254 KD C, 2015 WL 143753, at *1 (S.D. Ala. Jan. 12, 2015).

> The statute defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The terms does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. § 1692a(6)(F)(iii). " 'The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.' " Comer v. J.P. Morgan Chase Bank, N.A., 2011 WL 5878400, *2 (M.D.Ga. Nov. 23, 2011), quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.1985) (other citation omitted); see also Oliver v. Ocwen Loan Services, LLC, 2013 WL 210619, *3 (W.D.Wash. Jan. 18, 2013) ("[T]he legislative history indicates that 'mortgage servicer companies and others who service outstanding debts for others, [are

not debt collectors] so long as the debts were *not in default when taken for servicing.*' " (emphasis in original)).  Rule 12(b)(6) review. *Compare, e.g.,* Justice v. Ocwen Loan Servicing, LLC, 2014 WL 526143, *4 (S.D.Ohio Feb. 7, 2014) ("[I]f Ocwen acquired the servicing for the Loans before they were in default, then it is not a debt collector under the FDCPA. But if Ocwen acquired the servicing for the Loans after they were in default, it is a debt collector under the FDCPA."); Yarney v. Ocwen Loan Servicing, LLC, 929 F.Supp.2d 569, 575 (W.D.Va.2013) ("At the time Ocwen became the servicer on Plaintiff's home loan, the loan was already in default. Therefore, Ocwen is a debt collector seeking to collect an alleged debt for the purposes of FDCPA liability in this case."); *Comer, supra,* at *3 ("Chase, as a mortgage servicing company, is not a debt collector unless Comer's loan was in default at the time Chase took over the servicing."); Parker v. BAC Home Loans Servicing LP, 831 F.Supp.2d 88, 93 (D.D.C.2011) ("[I]f BAC was handling the loan before it went into default, it is not a debt collector in this case under the Act."); Portley v. Litton Loan Servicing LP, 2010 WL 1404610, *4 (E.D.Pa. Apr. 5, 2010) ("Because Plaintiff's mortgage loan was already in default at the time Defendant obtained the assignment, Defendant is a 'debt collector' for the purpose of the FDCPA."); Castrillo v. American Home Mortgage Servicing, Inc., 2010 WL 1424398, *5 (E.D.La. Apr. 5, 2010) ("[A]n 'exclusion' to the general definition of a debt collector applies to any person who attempts to collect a debt that was not in default at the time it was 'obtained.' AHMSI obtained its servicing rights in Castrillo's mortgage loan in April 2008, after Castrillo's loan was in default, and therefore AHMSI is not excluded from the general definition of a debt collector by § 1692a(6)(F)(iii)."), reconsideration denied, 2010 WL 1838061 (E .D.La. May 5, 2010); and Martin v. Select Portfolio Serving Holding Corp., 2008 WL 618788, *4 (S.D.Ohio Mar. 3, 2008) ("A servicing company is subject to the FDCPA [ ] if the loan was in default at the time the servicing company acquired the loan account.") *with, e.g.,* Loveless v. Bank of America, N.A., 2014 WL 4437576, *9 (M.D.Pa. Sept. 9, 2014) ("I conclude that the plaintiffs have alleged sufficient facts from which it can reasonably be inferred that the mortgage was in default at the time of the assignment, and, as such, the defendants fall within the definition of debt collectors."); Prickett, *supra,* 946 F.Supp.2d at 1249 ("The import of the decision in *Muniz,* to which this Court agrees, is that the relevant test of whether an entity is a debt collector under the FDCPA is whether the statutory definition applies, not whether the entity has ever stated in a document that it is a debt collector. Thus, *to survive a motion to dismiss, a complaint must allege facts demonstrating that the defendant obtained the debt after the plaintiff was in default.*" (most emphasis supplied)); and Owens v. JP Morgan Chase Bank, 2013 WL 2033149, *4 (W.D.Pa. May 14, 2013) ("Plaintiffs have failed to adequately allege that the mortgage was in default at the time RCS obtained the servicing rights; therefore, their claim that RCS violated the FDCPA is dismissed."). In other words, because Wells Fargo "does not fall within any exception created by § 1692a(6)(F), it falls within the FDCPA's definition of 'debt collector' and is subject to the substantive provisions of the Act." Memmott v. OneWest Bank, FSB, 2011 WL 1560985, *7 (D.Or. Feb. 9, 2011), *report and recommendation adopted as modified on other grounds,* 2011 WL 1559298 (D.Or. Apr. 25, 2011). Stated differently one more time, a party who acquires a debt after the debt is already in default, as alleged in the complaint here (or, at least, as can be inferred from the complaint allegations),

"becomes a 'debt collector' under the statute." <u>Deutsche Bank Trust Co. Americas v. Garst</u>, 989 F.Supp .2d 1194, 1201 (N.D.Ala.2013); *see also* <u>Federal Trade Comm'n v. Check Investors, Inc.</u>, 502 F.3d 159, 173 (3rd Cir.2007) ("In *Pollice,* we relied on [§ 1692a(6)(F)(iii) ] ... to hold that one attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired."), *cert. denied,* 555 U.S. 1011, 129 S.Ct. 569, 172 L.Ed.2d 429 (2008).

<u>Id.</u>, slip op., p. 5.

Here, the Jameses allege that Nationstar  "uses interstate commerce and the mails in its business as mortgage servicer, the principal purpose of which is the collection of debt.  Also, Nationstar regularly collects or attempts to collect debt owed or due or asserted to be owed or due to investors on whose behalf Nationstar services mortgages.  Nationstar has attempted to collect a debt which is it claimed was owed to another - Fannie Mae.  Also, Nationstar obtained the debt and/or servicings rights with respect to Plaintiffs' loan after the loan was considered by the creditor to be in default." (Complaint (Doc. 1), ¶ 53).  Applying the corect legal criteria, as articulated above, the Jameses have adequately alleged Nationstar's status as a "debt collector."[3]

## E.   Fannie Mae is "Creditor"

Nationstar's Argument regarding Fannie Mae's status as "creditor" is completely without merit.  First, the Complaint clearly alleges that Fannie Mae is a creditor.  Paragraph 4 states that Fannie Mae at all relevant times "owned or claimed to own Plaintiffs'  mortgage loan and the servicing of that mortgage was performed, in all material aspects, on Fannie Mae's behalf by its agent, Nationstar Mortgage, LLC" (Complaint (Doc. 1), ¶ 4). Because the Jameses plausibly pled and Fannie Mae is

---

[3]Nationstar's reliance on <u>Ausar El ex rel. Small, Jr. v. BAC (Bank of Am.) Home Loans Servicing LP</u>, 448 F. App'x 1 (11th Cir. 2011), is misplaced. In that case, as noted in the opinion, BAC acquired the promissory note and mortgage from Countrywide prior to the borrower's default. <u>Id.</u>, at 1.

a creditor purposes of TILA, Nationstar argument should be rejected on this basis alone.  Squires v. BAC Home Loans Servicing, LP, 2011 WL 5966948, at *3 (S.D. Ala. Nov. 29, 2011)("The Court is not free to disregard that factual allegation—which yields a plausible Twombly/Iqbal inference that BAC, in fact, became plaintiffs' creditor when it obtained beneficial interest in both mortgage and note—merely because BAC disputes it.").  Also, when asked by Mr. James in his QWR to identify the owner of the loan, Nationstar identified Fannie Mae is "the current owner of the note." (See Complaint, Exhibit C). Nationstar can not now in fairness play "hide the ball" by denying the truth of its previous statement.  If Fannie Mae is not the owner, then yet another violation of RESPA would be Nationstar's dishonesty in answering that specific question.   See 12 U.S.C. § 2605(k)(1)(D)(requiring a servicer to provide the identity of the creditor upon written request).

     "TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent."  Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir.1998);  Brown v. CitiMortgage, Inc., 817 F.Supp.2d 1328, 1334–35 (S.D.Ala.2011) ("The Eleventh Circuit has emphasized the strong remedial purpose of TILA and has heeded continual admonitions that we construe TILA ... liberally in the consumer's favor.").  Applying this general rule, courts have held that for purposes of TILA requirements (such as servicing-related requirements) which extend beyond the initial disclosure requirements,  the term "creditor" is not limited to the original extender of credit, but includes any assignee.  "[I]t is clear from § 1640 taken as a whole that Congress intended for § 1640(a)'s remedies to apply to any creditor or assignee that violates TILA's provisions."  Fairbanks Capital Corp. v. Jenkins, 225 F. Supp. 2d 910, 916 (N.D. Ill. 2002); see also Squires v. BAC Home Loans Servicing, LP, 2011 WL 5966948 (S.D. Ala. Nov. 29, 2011)("Nor does defendant reconcile its belief that "creditor" should be construed narrowly for § 1641(g) purposes with this Court's obligation to interpret TILA liberally in light of its remedial

purposes."); Cenat v. U.S. Bank, N.A., 930 F. Supp. 2d 1347, 1354 (S.D. Fla. 2013)("the Court finds that assignees can indeed be liable for their servicer's nondisclosures that violate TILA"); Egipciaco Ruiz v. R & G Fin. Corp., 313 F. Supp. 2d 48, 51 (D.P.R. 2004)(adopting reasoning in Jenkins).

Moreover, many courts have held that owners of a secured obligation are vicariously liable for their servicer's violation of TILA.  Lucien v. Fed. Nat. Mortgage Ass'n, 2014 WL 2184934 (S.D. Fla. May 23, 2014); Runkle v. Fed. Nat. Mortgage Ass'n, 905 F. Supp. 2d 1326, 1331 (S.D. Fla. 2012), *order vacated in part on reconsideration on other grounds*, 2012 WL 6554755 (S.D. Fla. Dec. 10, 2012); Kissinger v. Wells Fargo Bank, N.A., 888 F.Supp.2d 1309, 1315 (S.D.Fla.2012); Khan v. Bank of New York Mellon, 849 F. Supp. 2d 1377, 1382 (S.D. Fla. 2012); Davis v. Greenpoint Mortg. Funding, Inc., 2011 WL 7070221 at *3 (N.D.Ga. Mar. 1, 2011), report and recommendation adopted in part, rejected in part on other grounds, 2011 WL 7070222 (N.D.Ga. Sept. 19, 2011);

Rinegard–Guirma v. Bank of Am. N.A., 2012 WL 1110071, at *9 (D.Oregon, Apr. 2, 2012);

Galeano v. Fed. Home Loan Mortgage Corp., 2012 WL 3613890, at *6 (S.D. Fla. Aug. 21, 2012)

Consumer Solutions REO, LLC v. Hillery, 2010 WL 1222739, at *5 (N.D.Ca. Mar. 24, 2010).

Nationstar acknowledges that it is servicing the loan on Fannie Mae's behalf.  (See Supporting Memorandum (Doc. 9), p. 18.  Therefore, there is no dispute that Nationstar is servicing the loan on Fannie Mae's behalf as owner.  That being the case, Fannie Mae is vicariously liable as creditor for Nationstar's failure to properly apply the Jameses' payments.

**F.    Complaint Adequately Pleads Negligence and Wantonness Claims.**

      **1.    <u>Nationstar is Subject to Same Duties that Apply to all Actors</u>**

Nationstar argues that mortgage servicers are immune in Alabama to any claim for negligence or wantonness based on actions it took in servicing the mortgage. *There is no valid basis in the law*

*for such a bubble of immunity, particularly for a broad category of actors (mortgage servicers)*

*whose wrongful actions can and often do have a disastrous effect on working Alabama families and*

*their homes.*

In Alabama, a lender, bank or finance company (like any other entity), owes a general duty of reasonable care.  The same is true of debt collection, an activity which Alabama law has long applied tort principles.  Jacksonville State Bank v. Barnwell, 481 So. 2d 863, 865-66 (Ala. 1985)("Where the creditor takes actions which exceed the bounds of reasonableness, however, the debtor has an  action against the creditor for injuries suffered); Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 Ala. 1961.(Same).  There is no basis for shielding servicers from these basic principles.

 This Court aptly summarized Alabama law regarding a duty of care when applying same to a mortgage servicer in a RESPA case.

> The existence of a duty is determined by a number of factors, including (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.... The key factor is whether the injury was foreseeable by the defendant." *Pritchett v. ICN Medical Alliance, Inc.,* 938 So.2d 933, 937 (Ala.2006) (citation omitted). Public policy and social considerations may also weigh in that determination.

Marks v. Quicken Loans, Inc., 561 F. Supp. 2d 1259, 1266-67 (S.D. Ala. 2008)(mortgage company held to standard of reasonable care in managing escrow account).  "The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised."

Buchanan v. Merger Enters., Inc., 463 So.2d 121, 126 (Ala.1984). "Due care is relative always and much depends upon the facts of the particular case." Cox v. Miller, 361 So.2d 1044, 1048 (Ala.1978), see also Armstrong Bus. Services, Inc. v. AmSouth Bank, 817 So. 2d 665, 679 (Ala. 2001).

24

There is no exemption from this common-law principal for lenders, and there should be none for servicers.  Armstrong  illustrates this point.  Armstrong examined tort claims against a bank arising from the failure to comply with promises allegedly made in a letter.  While the court ultimately rejected the claims, it re-affirmed the general notion that banks are subject to the common-law duty of care.  The Court applied the common law test for determining whether a duty existed and held, based on the specific facts of that case, that there was no breach for failing to extend a loan to the plaintiff.  No fair reading of that case supports some blanket protection of a lender from a common-law negligence claim.

Patrick v. Union State Bank, 681 So.2d 1364 (Ala.1996), also upheld a negligence claim against a bank.  Patrick held that a bank owed a customer a duty of due care in applying its procedures in opening checking accounts to prevent imposters from opening an account in a customer's name.  Id., 681 So.2d at 1369-71. See also  Spriggs v. Compass Bank, 742 So. 2d 178, 181 (Ala. Civ. App. 1997) aff'd sub nom. Ex parte Alfa Mut. Gen. Ins. Co., 742 So. 2d 182 (Ala. 1999)(applying the "undertake a duty" doctrine to a lender to determine negligence liability); Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156, 1167 (M.D. Ala. 1999)(Lender may be subject to negligence based on common-law duty or breach of a statutory duty); Marks, 561 F. Supp. 2d at 1266.  It is certainly foreseeable that harm would result from Nationstar's failure to properly apply the Jameses' payments, its continuing its false statements of default and threats of foreclosure, and its failure to correct its errors.  On this basis, and by application of basis tort principles, the Jameses have adequately plead negligence and wantonness claims.

## 2.   Duty Arising From Statutory Requirements

In addition to the general duty that applies to all actors, including servicers, it is well established that a duty, for purposes of a tort claim, may arise from standards imposed by statute.

Parker Bldg. Services Co., Inc. v. Lightsey ex rel. Lightsey, 925 So. 2d 927, 930-31 (Ala. 2005); Thomas Learning Ctr., Inc. v. McGuirk, 766 So. 2d 161, 171 (Ala. Civ. App. 1998). Rigby v. FIA Card Servs., N.A., 490 F. App'x 230, 237 (11th Cir. 2012)(applying Alabama law and holding that investigative duties under federal consumer statute provided duty for purposes of negligence and wantonness claims).

This principle was specifically applied to the duties set out in Section 2605(e) in Rawlings v. Dovenmuehle Mortg., Inc., 64 F. Supp. 2d 1156, 1167 (M.D. Ala. 1999). The Rawlings case addressed facts very similar to those at bar. In Rawlings, the servicer failed to apply a payment and falsely held Rawlings in default of the mortgage. Rawlings wrote two QWRs asking the servicer to remedy the misapplied payment. The servicer failed to timely fix the problem and instead sent a series of erroneous default notices. Unlike Nationstar, the servicer in Rawlings ultimately corrected its error and a foreclosure was avoided. The court allowed Rawlings' claim for mental anguish for the RESPA violation and upheld Rawlings' negligence claim which was based on its failure to timely correct the payments error.

> It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty." Thompson v. Mindis Metals, Inc., 692 So.2d 805, 807 (Ala.1997) (citations omitted). "A legal duty arises either from the common law or from a statute." Id. The court finds that Defendant had a legal duty arising from a statute because § 2605 of RESPA imposes duties on mortgage loan servicers. Specifically, under § 2605, mortgage loan servicers must: (1) provide a notice of receipt of a qualified written request within 20 days of receipt of said request, see 12 U.S.C. § 2605(e)(1); and (2) take certain action with respect to the qualified written request within 60 days of receipt of said request, see id. § 2605(e)(2).

Id. at 1167.

The court should likewise allow both the negligence and wantonness claims based on the same principle.

### 3.  A Negligence Claim May Arise from a Contractual Relationship

The notion that a tort claim can not arise from a contractual obligation in Alabama is simply wrong.  It is well-established in Alabama that a negligence claim <u>can</u> arise where there also exists a contractual relationship.  "At common law, a duty of due care can accompany a contractual obligation." <u>Armstrong Bus. Servs., Inc.</u>, 817 So. 2d at 679,  <u>citing</u> <u>Pugh v. Butler Tel. Co.</u>, 512 So.2d 1317, 1319 (Ala.1987); see also <u>Stewart v. Hewlett-Packard Co.</u>, 2012 WL 6043642, at *3 (N.D. Ala. Nov. 29, 2012)("There is no doubt that. . . a possible claim of negligence and wantonness under Alabama law arises out of APCO's conduct. . .either through a contract for services or through the foreseeability of harm. . ..").

The seminal case on this point is <u>Morgan v. S. Cent. Bell Tel. Co.</u>, 466 So. 2d 107, 114 (Ala. 1985).  That opinion extensively analyzed the issue and carved out the controlling rule regarding the interplay between a contractual duty and a negligence claim.

> The trial court also held that an action for negligence was not supported by the facts. That court improperly characterized defendants' negligence in their performance of contracts entered into with the plaintiffs as nonfeasance rather than misfeasance. There is, in Alabama, no tort liability for nonfeasance for failing to do what one has promised to do in the absence of a duty to act apart from the promise made. On the other hand, misfeasance, or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things. See *C & C Products, Inc. v. Premier Industrial Corp.,* 290 Ala. 179, 186, 275 So.2d 124 (1972); and *Garig v. East End Memorial Hospital,* 279 Ala. 118, 182 So.2d 852 (1966). This distinction arises from the general rule of tort law to the effect that one who acts is under a duty to exercise reasonable care to avoid physical harm to persons and to property of others and this general duty or obligation would extend to parties in bargaining transactions such as sales and service transactions as well as to those who are not parties to bargaining transactions. Entering into a bargaining transaction, pursuant to which one party promises to do something, does not alter the fact that there was a *preexisting obligation* to act with reasonable care to avoid harm. Prosser, *Selected Topics in the Law of Torts,* 655, at 655-667 (1984).

<u>Id.</u>, 466 So. 2d at 114 (emphasis added).

The Defendants here had a contractual duty to properly apply payments in the specific manner required by the mortgage.  The failure to do so constitutes misfeasance which subjects Defendants

to negligence and wantonness claims, in addition to contract liability.

The cases cited by Nationstar spring from Judge Fuller's decision in <u>Blake v. Bank of Am.,</u> <u>N.A.</u>, 845 F. Supp. 2d 1206 (M.D. Ala. 2012). ***This is a wrongly decided case.*** <u>Blake</u> rests its holding on the statement that "Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract," and it cites three Alabama cases for that proposition: <u>Vines v.</u> <u>Crescent Transit Co.</u>, 264 Ala. 114, 85 So.2d 436, 440 (1956); <u>Barber v. Business Prods. Ctr.</u>, 677 So.2d 223, 228 (Ala.1996); and <u>Am. Dist. Tel. Co. of Ala. v. Roberts & Son</u>, 219 Ala. 595, 122 So. 837, 840 (1929). None of these cases support that holding. <u>Vines</u> and <u>Am. Dist. Tel Co. of Ala.</u> both pre-date <u>Morgan</u>. Therefore, those cases cannot be considered good law for the proposition that a negligence claim can never accompany a contractual duty because <u>Morgan</u> clearly holds the opposite. <u>Barber</u> addressed the tort of intentional interference with contractual relations, never reached this precise issue and is distinguishable; plus its holding was overruled in <u>White Sands Grp.,</u> <u>L.L.C. v. PRS II, LLC</u>, 32 So. 3d 5 (Ala. 2009).

The other Alabama federal district court rulings referred to by Nationstar feed off <u>Blake</u>'s erroneous and  un-supportable statement prohibiting tort actions where there is a contract. But repetition can not remedy a faulty legal position. These cases can not stand for a blanket principle that there can be no tort liability where there exists a contract, because the Alabama Supreme Court has directly held the opposite: "At common law, a duty of due care can accompany a contractual obligation." <u>Armstrong Bus. Servs., Inc.</u>, 817 So. 2d at 679. Moreover, any attempt to create a "cookie-cutter" rule that would exempt an entire class of public actors from basic common-law notions of due care can not be reconciled with the long-established definition of such duty as dependent upon the foreseeability of  harm.

It is fundamental that the standard of conduct which is the basis of the law of negligence

> is determined by balancing the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued. For this reason, it is seldom possible to reduce negligence to any definite rules; it is 'relative to the need and the occasion,' and conduct which would be proper under some circumstances becomes negligence under others.

William L. Prosser, Law of Torts § 31, at 149 (4th ed. 1974) *quoted with approval* Stanford By & Through Stanford v. Wal-Mart Stores, Inc., 600 So. 2d 234 (Ala. 1992).

In specifically addressing these concepts in the context of banking, the Patrick court quoted the following statement:

> In general, 'every person owes every other person a duty imposed by law to be careful not to hurt him.' In determining whether a duty exists in a given situation, however, courts should consider a number of factors, including public policy, social considerations, and foreseeability. The key factor is whether the injury was foreseeable by the defendant. The essential question is 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'

Patrick, 681 So. 2d 1368-69, quoting Smitherman v. McCafferty, 622 So.2d 322, 324 (Ala.1993) (citations omitted); see also Armstrong Bus. Servs., Inc., 817 So. 2d at 679("The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised.").

It is certainly foreseeable that the failure to credit payments and other actions by a servicer would result in harm to the borrower and even ultimately loss of a home, *with no fault by the homeowner*. For a vast majority of loans, mortgage servicers make virtually all the day-to-day decisions, including whether and how to apply payments, when to declare default and when to foreclose. The foreseeable harm resulting from a servicer's negligence or wantonness is crystal clear. The ability of hard-working, mortgage-paying homeowners to avoid foreclosure depends, in a very real and direct way, on the servicers' ability to properly manage their accounts. This class of corporate actors should not be granted a blanket immunity from the foreseeable damage caused

by their negligent or wanton acts.  There is no basis in the law for providing them such protection.


## **CONCLUSION**

For the reasons stated herein, Nationstar's Motion to Dismiss the Complaint is due to be

denied.

/s/ *Kenneth J. Riemer*
KENNETH J. RIEMER (RIEMK8712)
Attorney for Plaintiff
Underwood & Riemer, P.C.
P. O. Box 1206
Mobile, AL 36633
Telephone: 251-432-9212
Fax: 251-433-7172
E-mail: kjr@alaconsumerlaw.com


## **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2014 I electronically filed the foregoing with the Clerk
of the Court using the CM/ECF system which will send notification of such filing to the counsel of
record.

/s/ *Kenneth J. Riemer*
KENNETH J. RIEMER