**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **AARON LEE JAMES, SR.,** *et al.*, | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION 14-0545-WS-N** |
| | ) |
| **NATIONSTAR MORTGAGE, LLC,** *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

**ORDER**

    This matter comes before the Court on defendants' Motion to Dismiss (doc. 8). The Motion has been briefed and is now ripe.

**I.    Background.**

    Plaintiffs, Aaron Lee James, Sr. and Willie Mae James (collectively, the "Jameses"), brought this action against Nationstar Mortgage, LLC ("Nationstar") and Federal National Mortgage Association ("FNMA"). Although the Complaint spans 17 pages, the gist of it is straightforward, to-wit: the Jameses contend that defendants failed to credit their mortgage payments properly, setting off a chain of events culminating in cascading violations of federal consumer protection statutes.

    The Complaint's well-pleaded factual allegations (which are accepted as true on Rule 12(b)(6) review) reflect that the Jameses entered into a home mortgage loan (the "Loan") with nonparty Homecomings Financial Network Inc. in September 2004, with the Loan secured by the James' longstanding residence. (Doc. 1, ¶ 6.) Servicing rights on the Loan were transferred to Nationstar in January 2009, at which time the Loan was deemed to be in default. (*Id.*, ¶ 8.) When Mr. James filed a Chapter 13 bankruptcy petition in June 2011, Nationstar filed a proof of claim pursuant to which more than $20,000 of pre- and post-petition arrearage (*i.e.*, unpaid loan payments and fees) were placed in his bankruptcy plan and ultimately paid through the bankruptcy trustee. (*Id.*, ¶¶ 9-11.) The Complaint alleges that the arrearage has been paid in

full, and that the Jameses simultaneously continued to make regular monthly payments on the Loan.  (*Id.*, ¶¶ 11, 13.)

The problems giving rise to this lawsuit began on November 22, 2013, when Nationstar sent a letter to Mr. James stating incorrectly, "You have not made payments on your loan since 12/01/2012."  (Doc. 1, ¶ 14.)  The November 22 letter concluded with Nationstar threatening to initiate foreclosure proceedings unless the Jameses immediately paid a nearly $12,000 arrearage. (*Id.*)  The Complaint alleges that the letter's statements alleging nonpayment and arrearage "were false and Nationstar knew they were false" because its own records confirmed that the Jameses had made 28 regular payments on the Loan since December 2012.  (*Id.*, ¶ 15.)  The Complaint also alleges that Nationstar sent the November 22 letter directly to Mr. James, despite knowledge that he was represented by counsel.  (*Id.*, ¶ 16.)  The letter caused the Jameses to undergo "extreme stress, worry and fear of losing their home."  (*Id.*, ¶ 17.)

Follow-up communications by Mr. James proved ineffectual, as Nationstar persisted in its incorrect assertion that the Jameses had made no Loan payments in nearly a year.  (*Id.*, ¶¶ 18, 26.)  On January 16, 2014, Mr. James wrote to Nationstar disputing the company's representations in the November 22 letter and requesting specific information concerning his account and the servicing of the Loan.  (*Id.*, ¶ 19.)  Nationstar's reply was nonresponsive in multiple respects, contained formulaic and irrelevant objections, failed to provide requested information and documentation, and did not correct the servicing error that Mr. James had pointed out, even though Nationstar's own payment history information conclusively established the error of its November 22 letter.  (*Id.*, ¶¶ 21-27.)  Northstar compounded these defects by refusing to credit certain April 2014 payments to the Loan, and by reporting false and derogatory information about the Jameses to consumer reporting agencies.  (*Id.*, ¶¶ 30-31.)

On the strength of these and other factual allegations, plaintiffs assert six causes of action in their Complaint, to-wit: (i) breach of mortgage and note against both defendants; (ii) multiple violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), against defendant Nationstar; (iii) multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), against defendant Nationstar; (iv) violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), against defendant FNMA; and (v) negligence and wantonness against both defendants.  Defendants have moved pursuant to Rule 12(b)(6), Fed.R.Civ.P., for dismissal of one subpart of the FDCPA claim, the entire TILA claim, and the

state-law negligence / wantonness claims, all for failure to state a claim upon which relief can be granted.[1]  Plaintiffs oppose the Rule 12(b)(6) Motion.

## II.    Analysis.

### A.    *Legal Standard.*

Defendants' Motion asserts that portions of the Complaint fail to state claims upon which relief can be granted, and therefore is properly analyzed under Rule 12(b)(6), Fed.R.Civ.P.  To withstand Rule 12(b)(6) scrutiny and comply with the minimum pleading requirements of Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ][its] claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim."  *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).  Thus, minimum pleading standards "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level."  *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).  "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, ... but must give the defendant fair notice of what the plaintiff's

---

[1]    As originally presented, the Motion to Dismiss was far more extensive; indeed, defendants initially sought dismissal of the entire RESPA cause of action found at Count II and all of the FDCPA claims set forth in Count III.  (*See* doc. 9, at 5-19.)  In their reply brief, however, defendants purported to "withdraw" their Rule 12(b)(6) Motion as it related to the RESPA claims found at Count II and all FDCPA claims at Count III except for the subpart alleging a violation of § 1692f(6).  (*See* doc. 17, at 1-2.)  To effectuate defendants' wishes in this regard, the Court deems the Motion to Dismiss **moot** as to Counts II and III, excepting the § 1692f(6) claim found in Count III.  This Order will address the remaining portions of the Motion to Dismiss, consisting of the § 1692f(6) claim at Count III, the TILA claim at Count IV, and the negligence/wantonness claims at Counts V and VI.

claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

For purposes of this Rule 12(b)(6) analysis, the Court accepts as true all well-pleaded factual allegations of the Complaint, and draws all reasonable inferences in the plaintiffs' favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"). Notwithstanding this deference to a plaintiff's pleading at the Rule 12(b)(6) stage, it is also true that "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

### B.    Section 1692f(6) Claim (Count III).

Embedded in Count III of the Complaint is a FDCPA claim against Nationstar for violation of 15 U.S.C. § 1692f(6). (*See* doc. 1, ¶ 56(E).) In relevant part, that subsection prohibits debt collectors from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if … there is no present right to possession of the property claimed as collateral through an enforceable security interest." § 1692f(6)(A). Defendants maintain that this claim must be dismissed because well-pleaded allegations of the Complaint reflect that FNMA, on whose behalf Nationstar was servicing the Loan, "had an enforceable security interest in Plaintiffs' property through its ownership of Plaintiffs' mortgage loan." (Doc. 9, at 18.) Defendants rely on a strand of authority in which courts have recognized that "Section 1692f(6) only forbids threats against a consumer's property if there is no enforceable security interest in the property." *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp.2d 1369, 1375 (M.D. Ga. 2011). So defendants' position is that the mere existence of a security interest, without more, insulates Nationstar from § 1692f(6) liability, as a matter of law.

The trouble with this argument is that it ignores the statutory requirement of a "present right to possession of the property" by the debt collector threatening nonjudicial action. *See* § 1692f(6)(A). Of course, FNMA (by and through its servicer, Nationstar) would have had a "present right to possession of the property" only if the Jameses were in default when the threat of foreclosure was made. Stated differently, it is the combination of a security interest <u>and</u> a present right to possession that precludes debt collector liability under § 1692f(6) for threatening nonjudicial foreclosure proceedings. Abundant case authority supports this plain reading of the

statute. *See, e.g., Fenello v. Bank of America, NA*, 577 Fed.Appx. 899, 902-03 (11th Cir. Aug. 12, 2014) (affirming dismissal of § 1692f(6) claim where defendants had right to foreclose under security deed if plaintiffs defaulted, "[a]nd it is undisputed that the Fenellos have not made any payments on the promissory note since 2008," such that "the defendants have the present right to possess the Fenellos' property").[2]  Here, the well-pleaded factual allegations of the Jameses' Complaint reflect that the Loan was not in default when Nationstar threatened foreclosure via letter dated November 22, 2013.  Accepting those allegations as true (as the Court must for Rule 12(b)(6) purposes), the Complaint shows that Nationstar lacked a present right to possession of the property when it made the threat.[3]  Thus, Nationstar is alleged to have threatened nonjudicial forfeiture of the Jameses' home even though it had "no present right to possession of the property" because the Loan on which the security interest was predicated was not in default.  In

---

[2]     *See also Speleos v. BAC Home Loans Servicing, L.P.*, 824 F. Supp.2d 226, 233 (D. Mass. 2011) ("present right to possession" for § 1692f(6) found where loan documents gave defendant right to foreclose, and plaintiffs had defaulted); *Johnson v. Trott & Trott, P.C.*, 829 F. Supp.2d 564, 571 (W.D. Mich. 2011) (plaintiff stated a § 1692f(6) claim where complaint alleged that loan had already been paid off); *De Souza v. JP Morgan & Chase Co.*, 2014 WL 1338762, *4 (N.D. Ga. Apr. 2, 2014) (dismissing § 1692f(6) claim where "the Plaintiff does not dispute that Chase currently holds the security deed ***and that the Plaintiff is in default***") (emphasis added); *Collins v. Siani's Salvage, LLC*, 2014 WL 1244057, *3 (E.D. Pa. Mar. 26, 2014) ("because of Plaintiff's default, Siani had a present right to possession" for § 1692f(6) purposes); *Patton v. American Home Mortgage Servicing, Inc.*, 2013 WL 1310560, *5 (S.D. Miss. Mar. 28, 2013) ("The Trust had a 'present right to possession of the [P]roperty' because it owned the Deed of Trust and Note at the time of Plaintiff's default."); *Wideman v. Bank of America, N.A.*, 2011 WL 6749829, *3 (M.D. Ga. Dec. 23, 2011) (concluding that plaintiff did not state viable § 1692f(6) claim where she admitted "that there was an enforceable security interest, and she admits that she defaulted on the loan"); *Burnett v. Mortgage Electronic Registration Systems, Inc.*, 2009 WL 3582294, *4 (D. Utah Oct. 27, 2009) (plaintiff failed to state § 1692f(6) claim because "when Plaintiff defaulted on her contractual monthly payments, MERS had authority under the Deed of Trust to initiate foreclosure proceedings"); *Pistole v. Mortgage Electronic Registration Systems, Inc.*, 2008 WL 2566366, *5 (E.D. Mich. June 24, 2008) ("The Court dismisses Pistole's 15 U.S.C. § 1692f(6)(A) claim; there was a present right to possession of the property because the security interest (i.e., the mortgage) was in default.").

[3]     The *Jenkins* decision on which defendants rely is distinguishable because there was no indication in that case that the loan was not in default.  Here, by contrast, the Jameses have pleaded that the Loan was not in default, such that defendants would not have had a present right to possession of the collateral and Nationstar's threats of nonjudicial foreclosure were violative of § 1692f(6).

short, plaintiffs have alleged a viable cause of action for violation of § 1692f(6), notwithstanding defendants' security interest in the Jameses' home.  The Motion to Dismiss will be **denied** as to the § 1692f(6) cause of action.

        ***C.        TILA Claim (Count IV).***

        In Count IV of the Complaint, the Jameses bring a TILA claim against defendant FNMA. That cause of action is pleaded as follows: "Fannie Mae, as creditor, was required by 15 U.S.C. § 1639f to promptly and accurately credit the Plaintiffs' account with the payments received.  It has failed to do so." (Doc. 1, ¶ 62.)  Section 1639f provides that "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt."  *Id.*  As noted, the Complaint alleges (and all parties agree) that Nationstar, not FNMA, was the "servicer" of the Loan during the relevant time period (*see* doc. 1, ¶¶ 4, 8), yet Count IV is brought exclusively against FNMA "as creditor."  Thus, plaintiffs seek to hold FNMA liable for Nationstar's alleged violation of § 1639f.

        Defendants argue, without rebuttal from plaintiffs, that the Jameses' claim against FNMA for alleged violation of § 1639f necessarily proceeds under 15 U.S.C. § 1640(a), which is TILA's civil liability provision.  That section provides that "any ***creditor*** who fails to comply with any requirement imposed under this part … with respect to any person is liable to such person."  15 U.S.C. § 1640(a) (emphasis added).  "Creditor" is a term of art in the TILA framework, and is statutorily defined as referring "only to a person who both (1) regularly extends … consumer credit …, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(g).  "This definition is restrictive and precise, referring *only* to a person who satisfies *both* requirements of the provision."  *Vincent v. The Money Store*, 736 F.3d 88, 105 (2nd Cir. 2013) (citation and internal quotation marks omitted).  FNMA's position is, quite simply, that it is not a "creditor" under the TILA definition because the Complaint itself confirms that FNMA is not "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  Indeed, the Complaint states that the Jameses initially entered into the Loan with Homecomings Financial Network Inc. (*see* doc. 1, ¶ 6), so that entity – and not FNMA – is the "creditor" for purposes of TILA.

Plaintiffs' counterarguments are both limited and unpersuasive.  For starters, the Jameses insist that defendants are wrong because "the Complaint clearly alleges that Fannie Mae is a creditor," and bluster that if FNMA does not really own the Loan, then plaintiffs may assert new and additional claims against FNMA for playing "hide the ball."  (Doc. 15, at 21-22.)  Such rhetoric misses the point.  To be sure, the Complaint labels FNMA as a "creditor."  (Doc. 1, ¶ 62.)  But in the context of TILA, "creditor" is a legal term with a specific meaning that diverges from its ordinary, common-sense usage.  Merely making a conclusory allegation in a complaint that FNMA is a TILA "creditor" does not entitle the Jameses to a Rule 12(b)(6) determination that it is so.  *See, e.g., Mamani*, 654 F.3d at 1153 ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").  Moreover, the Jameses affirmatively pleaded that Homecomings Financial Network was the entity to which their debt was initially payable; therefore, FNMA cannot be a TILA creditor within the definition of § 1602(g).  *See, e.g., Vincent*, 736 F.3d at 106 (where initial lenders were entities other than defendant, defendant-assignee was "therefore not a 'creditor' under TILA with respect to the transactions at issue here").

Next, the Jameses advance the decidedly shaky proposition that, under TILA, "the term 'creditor' is not limited to the original extender of credit, but includes any assignee."  (Doc. 15, at 22.)  The statutory language itself precludes this Court from playing fast and loose with the TILA definition of "creditor" in the manner that the Jameses propose.  In particular, the TILA scheme includes a provision governing "Liability of assignee for consumer credit transactions secured by real property."  That subsection provides that a civil action against a "creditor" for a TILA violation "with respect to a consumer credit transaction secured by real property ***may be maintained against any assignee of such creditor only if … the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement***."  15 U.S.C. § 1641(e)(1)(A) (emphasis added).  The Jameses' TILA claim against FNMA does not involve a violation that would have been apparent on the face of a disclosure statement.  Because § 1641(e) provides that "[e]xcept as otherwise specifically provided in this subchapter," this is the "only" circumstance in which a TILA action with respect to a consumer credit transaction secured by real property may be maintained against an assignee, it follows that assignee liability is unavailable here and that plaintiffs cannot pursue their TILA claim against FNMA for violation of § 1639f.

In opposing this outcome, plaintiffs urge the Court to expand § 1640(a) civil remedies for TILA violations to reach all creditors and assignees.  They are absolutely correct that TILA is a consumer protection statute to be construed liberally.  *See, e.g., Brown v. CitiMortgage, Inc.*, 817 F. Supp.2d 1328, 1334-35 (S.D. Ala. 2011) (recognizing "the strong remedial purpose of TILA" and the obligation to "construe TILA … liberally in the consumer's favor") (citations omitted).  However, the liberal construction canon is not a judicial license to rewrite a statute to fit what a court thinks Congress should or might have said, but did not.  Federal courts are not at liberty to second-guess or rewrite federal statutes merely because they disagree with legislative choices or think they can capture congressional intent more accurately and artfully than Congress itself did.  *See, e.g., Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 n.6, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ("It is not our role to conform an unambiguous statute to what we think Congress probably intended ….") (citation and internal quotation marks omitted).[4]  Here, Congress has seen fit to define "creditor" in a narrow manner that excludes assignees; has generally provided for civil liability under § 1640(a) only as to "creditors;" and has provided in § 1641(e) for assignee liability for consumer credit transactions secured by real property only where violations are apparent on the face of the disclosure statement, "[e]xcept as otherwise specifically provided."  Such specific, unambiguous statutory language governs, and precludes expansion of TILA liability to reach FNMA in the circumstances presented here.

To be sure, the Jameses have cited a handful of district court opinions endorsing this kind of judicial rewrite of TILA to unlock the full panoply of § 1640(a) relief against any creditor or assignee in any case.[5]  The Eleventh Circuit does not appear to have addressed this issue;

---

[4]       *See also United States v. Crape*, 603 F.3d 1237, 1244-45 (11th Cir. 2010) ("[w]e are not at liberty to rewrite the statute to reflect a meaning we deem more desirable" and "we will not attribute words to Congress that it has not written") (citations omitted); *In re Hedrick*, 524 F.3d 1175, 1186 (11th Cir. 2008) ("We have no license to assume that Congress did not mean what it said …, but we are instead bound to assume that it meant exactly what it said.").

[5]       At least one of the cited decisions does not support the Jameses' position.  In *Squires v. BAC Home Loans Servicing, LP*, 2011 WL 5966948, *3 (S.D. Ala. Nov. 29, 2011), the undersigned considered a TILA claim brought under § 1641(g).  That subsection imposes particular obligations on "the creditor that is the new owner or assignee of the debt."  15 U.S.C. § 1641(g).  The Federal Reserve Board has decried the use of the traditional TILA "creditor" definition as to that subsection.  *See* 74 Fed.Reg. 60143-01, at 60145 ("The Board believes that to give effect to the legislative purpose, the term 'creditor' in [§ 1641(g)] must be construed to (Continued)

however, the Second Circuit did so in compelling fashion in *Vincent v. The Money Store*, 736 F.3d 88 (2nd Cir. 2013). *Vincent* involved TILA claims brought against the assignee of a mortgage loan based on the plaintiffs' allegations that said assignee "had charged their accounts for fees and expenses which it had no right to collect, and had failed to refund the overcharges as required by TILA." *Id.* at 95. The district court dismissed the TILA claims, finding that the assignee did not qualify as a "creditor" within the statutory definition. On appeal, the Second Circuit agreed. As an initial matter, the *Vincent* court observed that TILA "imposes general liability only on creditors and greatly circumscribes the liability of assignees," using a "restrictive and precise" definition of "creditor." *Id.* at 105. After surveying the Federal Reserve Board's Regulation Z, applicable case law, and the statutory language itself, *Vincent* agreed with the district court that the assignee was not a "creditor" under the clear definition in TILA, and therefore could not be liable under the specific TILA section at issue (which imposed certain responsibilities on "creditors"). As for the plaintiff's argument that it was unfair to allow an assignee to get away with a violation for which the original creditor would have been exposed to TILA liability had it retained the loan, the Second Circuit had the following to say:

> "We may think it unwise to allow an assignee to escape TILA liability when it overcharges the debtor and collects unauthorized fees, where the original creditor would otherwise be required to refund the debtor promptly. But such a result is not 'absurd.' We will not rewrite the text of the statute, nor will we refuse to defer to the Federal Reserve's consideration of the liability of assignees in Regulation Z. We note this discrepancy, however, for the benefit of Congress and the Federal Reserve. … For the reasons stated above, The Money Store is not a 'creditor' under TILA and the district court correctly dismissed the plaintiffs' TILA claims."

---

refer to the owner of the debt following the sale, transfer or assignment, without regard to whether that party would be a 'creditor' for other purposes under TILA or Regulation Z."). In *Squires*, the Court found that the Board's statement, the accompanying regulations, and the statutory language itself, all examined through the lens of liberal construction of TILA, precluded Rule 12(b)(6) dismissal of the plaintiff's TILA claim. The distinctions between *Squires* and the case at bar are glaring and significant. Moreover, in *Squires*, this Court neither held nor intimated that "creditors" and "assignees" were terms that could be used interchangeably throughout TILA to impose co-extensive liability on both sets of entities, without regard to Congress's clear statements to the contrary. Thus, *Squires* does not bolster plaintiffs' argument.

*Vincent*, 736 F.3d at 109.[6]

The same is true here.  Pursuant to the clear text of §§ 1602(g) (defining "creditor"), 1640(a) (creating civil liability only for "any creditor who fails to comply with any requirement imposed under this part"), and 1641(e) ("[e]xcept as otherwise specifically provided," allowing civil action under TILA against assignee only if the violation was apparent on the face of the disclosure statement), the § 1639f requirement that servicers credit payments to a consumer's loan account as of the date of receipt may allow vicarious liability for original lenders (*i.e.*, TILA "creditors"), but it does not create or allow a cause of action for damages against assignees.[7]

---

[6]     *Vincent* is by no means unique or an outlier in the caselaw.  *See also Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998) ("Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA."); *Signori v. Federal Nat'l Mortg. Ass'n*, 934 F. Supp.2d 1364, 1368 (S.D. Fla. 2013) ("If the statute, as written, creates a loophole through which assignees can avoid liability for failing to comply with TILA …, it is up to Congress, not this Court, to close that loophole."); *Claude v. Wells Fargo Home Mortg.*, 2014 WL 4073215, *14 (D. Conn. Aug. 14, 2014) ("The Court fails to see how TILA is at all implicated in this matter given that the Defendant is an assignee and the original debt instrument appears to be unrelated to the Plaintiff's claim."); *Selman v. CitiMortgage, Inc.*, 2013 WL 838193, *15 (S.D. Ala. Mar. 5, 2013) (dismissing TILA claim where defendants were not "creditors" within the TILA definition, and where plaintiffs did not identify any provision other than § 1640(a) that might reasonably give rise to a private right of action for § 1639f violations); *Holcomb v. Federal Home Loan Mortg. Corp.*, 2011 WL 5080324, *4 (S.D. Fla. Oct. 26, 2011) ("Section 1641(a) plainly limits any civil actions under TILA against assignees to those in which the violation is apparent on the face of the disclosure statements '[e]xcept as otherwise *specifically* provided,'" and "the Court will not defy the plain meaning of a statute in an attempt to make it more effective and thus take on a legislative rather than judicial function"); *Bushong v. Paramount Equity Mortgage, Inc.*, 2010 WL 3945410, *8 (D. Or. May 24, 2010) ("Had Congress intended section 1640(a)'s remedies to apply to assignees, … then Congress would have made express reference to assignees as well."); *Bills v. BNC Mortg., Inc.*, 502 F. Supp.2d 773, 776 (N.D. Ill. 2007) (reasoning that allowing direct TILA liability against assignee in circumstances presented would be "simply an end run around § 1641(a)"); *Briggs v. Provident Bank*, 349 F. Supp.2d 1124, 1131 (N.D. Ill. 2004) ("an assignee's liability, including statutory damages, is limited to instances in which the TILA violation is apparent on the face of the documents").

[7]     To be clear, the Court is not affirmatively declaring that vicarious liability is available as a general proposition in TILA cases, nor is it holding that the Jameses have validly pleaded such a theory in their Complaint for *Twombly/Iqbal* purposes.  Rather, the Court's determination is that, even if the Complaint properly and sufficiently invokes a cognizable vicarious theory of liability running against FNMA for the alleged servicing errors of Nationstar in crediting payments on the Loan, FNMA cannot be held liable for the purported § 1639f violation because it is not a TILA "creditor" with respect to the Loan.

Arguably, this result may be viewed as unwise or unfair; however, it is not absurd.  Congress appears to have made a deliberate choice to treat original lenders and assignees differently with respect to TILA liability.  It is not the proper function of the federal district courts to revisit, much less overrule, that legislative determination.  Any perceived unfairness or imprudence in the TILA framework is for Congress to correct, not the courts.  Accordingly, Count IV of the Complaint fails to state a viable TILA claim against FNMA for violation of § 1639f because FNMA is not a "creditor" for § 1640(a) purposes.  The Motion to Dismiss is **granted** as to that cause of action.

### D.      *Negligence / Wantonness Claims (Counts V & VI).*

In Counts V and VI of the Complaint, the Jameses allege state-law claims of negligence and wantonness against both defendants.  Those counts are pleaded with no specificity, and are instead limited to generic allegations that "[t]he acts and omissions alleged herein by Defendants constitute wantonness" and "negligence;" that "Defendants have also wantonly [negligently] hired, trained and supervised its [*sic*] employees;" and that FNMA "is liable for Nationstar's tortuous [*sic*] acts and omissions" because Nationstar was acting as FNMA's agent.  (Doc. 1, ¶¶ 65-67, 70-72.)

As defendants correctly point out in their Motion, a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law.  *See, e.g., Ott v. Quicken Loans, Inc.*, 2015 WL 248938, *5 (M.D. Ala. Jan. 20, 2015) ("Alabama law recognizes no such form of action in this context.  Specifically, there is an emerging consensus that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.") (citations and internal quotation marks omitted); *Branch Banking and Trust Co. v. EBR Investments LLC*, 2015 WL 225457, *3 (N.D. Ala. Jan. 16, 2015) ("Numerous federal courts, including the undersigned, have concluded that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.") (citations and internal quotation marks omitted); *Alverson v. PNC Bank*, 2014 WL 7146995 (S.D. Ala. Dec. 15, 2014) ("Alabama law does not recognize a tort-like cause of action for breach of a duty created by contract, at least not between the parties to a contract;

therefore, a mortgagor cannot maintain a cause of action against … a mortgagee for negligent or wanton servicing of a mortgage contract.").[8]

---

[8]     *See also Deutsche Bank Trust Co. Americas v. Garst*, 989 F. Supp.2d 1194, 1205 (N.D. Ala. 2013) (dismissing claims for negligence and wantonness because negligent failure to perform a contract is but a breach of contract, damages for mortgage servicing are typically economic, and there is a "plethora of alternative avenues for relief in 'negligent mortgage servicing' cases"); *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp.2d 1358, 1370 (S.D. Ala. 2013) ("To the extent, then, that Wallace seeks to derive tort claims of negligence and wantonness to recover economic loss (no physical injuries) stemming from SunTrust's purported failure to perform contractual duties in the servicing of her mortgage, the Court finds that Wallace's negligence and wantonness claims fail to state claims upon which relief can be granted."); *Costine v. BAC Home Loans*, 946 F. Supp.2d 1224, 1234 (N.D. Ala. 2013) (holding that "claims for negligent mortgage servicing are not legally cognizable under Alabama law"); *Prickett v. BAC Home Loans*, 946 F. Supp.2d 1236, 1245 (N.D. Ala. 2013) ("Because all the duties Plaintiffs contend BANA breached are based on contractual agreements between the parties, Plaintiffs' claim for wanton loan servicing and wanton foreclosure initiation are not legally cognizable under Alabama law."); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp.2d 1273, 1290 (N.D. Ala. 2013) ("Because the duty Defendant allegedly breached is based on a contract, and because Alabama law does not permit Plaintiff to assert a tort claim against Defendants for their purported breach of a contract, both Plaintiffs' negligence and wantonness claims are not actionable under Alabama law."); *Blake v. Bank of America, N.A.*, 845 F. Supp.2d 1206, 1210-11 (M.D. Ala. 2012) ("Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing"); *Duke v. JPMorgan Chase Bank Nat'l Ass'n*, 2014 WL 5770583, *4 (N.D. Ala. Nov. 5, 2014) ("Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing") (citation and internal quotation marks omitted); *Givens v. Saxon Mortg. Services, Inc.*, 2014 WL 2452891, *13 (S.D. Ala. June 2, 2014) ("Givens's claims for negligence and wantonness against Saxon for failing to properly credit Givens with payments must fail because this is essentially alleging a breach of contract."); *Quinn v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 977632, *6 (S.D. Ala. Mar. 12, 2014) ("Quinn's claims that defendants negligently or wantonly serviced his mortgage loan (resulting in payments not being accepted or properly applied to his account) are not viable under Alabama law."); *Selman*, 2013 WL 838193, at *6 ("The Court agrees with these decisions' construction of Alabama law, and particularly their emphasis that the mortgage servicing obligations at issue here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public."); *Webb v. Ocwen Loan Servicing, LLC*, 2012 WL 5906729, *7 (S.D. Ala. Nov. 26, 2012) ("under Alabama law a cause of action for negligent servicing of a mortgage against Ocwen cannot be maintained where the damages are economic"); *Forester v. Bank of America, N.A.*, 2012 WL 3206471, *5 (S.D. Ala. Aug. 7, 2012) ("Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care. Pure economic loss – which is what [Forester] claims – does not suffice.") (citations omitted); *Fassina v. CitiMortgage, Inc.*, 2012 WL 2577608, *7 (N.D. Ala. July 2, 2012) ("Plaintiff's claim alleging negligent, reckless, and/or wanton mortgage servicing (Continued)

The point is simple.  Every single one of these cases (and many others not cited herein) rejects the availability of negligence and wantonness claims under Alabama law under comparable circumstances to those identified by the Jameses.  Every one of these cases undercuts the legal viability of Counts V and VI, and rejects the very arguments articulated by the Jameses in opposing dismissal of those causes of action.  (*See* doc. 15, at 23-30.)  This ground having been thoroughly and exhaustively plowed in the aforementioned case authorities, no constructive purpose would be served by re-plowing it here.  Suffice it to say that the Court agrees with these decisions' construction of Alabama law, and particularly their recognition that the mortgage servicing obligations at issue here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public.[9]  To the extent that the Jameses seek to hold

---

is not valid under Alabama law."); *McClung v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 1642209, *8 (N.D. Ala. May 7, 2012) ("the court similarly concludes that there is no cause of action for negligent or wanton mortgage servicing under Alabama law").

[9]    Plaintiffs attempt to circumvent these principles by asserting that statutes, rather than contracts, form the basis for the duties that plaintiffs claim were breached.  (*See* doc. 15, at 25-26.)  This argument is unpersuasive for a host of reasons.  First, plaintiffs' Complaint neither provides an inkling that Counts V and VI are proceeding under a negligence *per se* theory nor recites any statutes as being the source of the duties that they claim were breached; therefore, it does not comport with *Twombly/Iqbal* pleading requirements.  Even plaintiffs' brief does not fill in these gaps by articulating which statute(s) they contend provide the legal underpinnings for their negligence and wantonness claims herein.  (Had the brief included that information, plaintiffs still would not prevail, as a party cannot amend its pleading via brief in response to a dispositive motion.)  Second, federal courts in Alabama have given short shrift to similar efforts invoking the doctrine of negligence *per se* to outflank the phalanx of case authorities holding that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.  *See Costine*, 946 F. Supp.2d at 1233-34; *Prickett*, 946 F. Supp.2d at 1247.  Third, the singular case that plaintiffs cite in support their position, *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp.2d 1156, 1167 (M.D. Ala. 1999), was decided more than a dozen years before the sprawling body of case law expressly concluding that Alabama law does not allow plaintiffs to sue for negligent or wanton mortgage servicing.  Not surprisingly, *Rawlings* in no way considers (much less rebuts) the reasoning underlying such authorities, so it cannot support the proposition that these numerous recent federal cases have all interpreted and applied Alabama law incorrectly.  Fourth, the Jameses' appeal to negligence *per se* cannot help them because the legal duties underlying their claims against FNMA and Nationstar arise in contract.  The statutes in play in this case regulate the contractual relationship between the Jameses and FNMA / Nationstar, but do not eliminate or supplant that contractual relationship; therefore, the reasoning (Continued)

defendants liable on theories of negligent or wanton servicing of their mortgage, Counts V and
VI fail to state claims upon which relief can be granted.

   Also included in Counts V and VI are subclaims that defendants negligently or wantonly
"hired, trained and supervised [their] employees."  (Doc. 1, ¶¶ 66, 71.)  Under Alabama law,
such a claim requires a showing that "(1) the employee committed a tort recognized under
Alabama law; (2) the employer had actual notice of this conduct or would have gained such
notice if it exercised due and proper diligence; and (3) the employer failed to respond to this
notice adequately."  *Lawrence v. Christian Mission Center Inc. of Enterprise*, 780 F. Supp.2d
1209, 1218 (M.D. Ala. 2011); *see also Costine v. BAC Home Loans*, 946 F. Supp.2d 1224, 1234-
35 (N.D. Ala. 2013) (same); *Crutcher v. Vickers*, 2012 WL 3860557, *13 (N.D. Ala. Sept. 5,
2012) (explaining that a critical element of either negligent supervision or negligent training
under Alabama law is "proof of the employer's actual or constructive awareness of the
employee's incompetency").  The Complaint alleges facts that would support none of these
elements (especially with regard to the elements of employer notice and failure to respond);
rather, Counts V and VI are simply conclusory, unsubstantiated allegations of negligent / wanton
hiring, training and supervision.  That is not good enough to withstand Rule 12(b)(6) scrutiny.
*See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)
(plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," so as to
"nudge[ ] their claims across the line from conceivable to plausible"); *GeorgiaCarry.Org, Inc. v.
Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (*Twombly / Iqbal* pleading standard "necessarily
requires that a plaintiff include factual allegations for each essential element of his or her
claim").

   As presently constituted, then, Counts V and VI (including both the claims of negligent/
wanton servicing of plaintiffs' mortgage account and the subsidiary claims of negligent/ wanton
hiring, training or supervision) are properly **dismissed** for failure to state a claim upon which
relief can be granted.

_____

of the line of authorities beginning with *Blake* (*i.e.*, that the obligations in question are rooted in
contract rather than tort) remains fully intact, even in the face of a negligence *per se* claim (had
plaintiffs properly presented one in their pleading, which they did not).

**III.   Conclusion.**

For all of the foregoing reasons, Defendants' Motion to Dismiss (doc. 8) is **granted in part**, and **denied in part**.  The Motion is **granted** with respect to Counts IV (TILA), V (wantonness) and VI (negligence) of the Complaint.  Those claims and causes of action are **dismissed** for failure to state a claim upon which relief can be granted.  In all other respects, the Motion is **denied**.  Defendants are **ordered** to file their answer(s) to the Complaint on or before **March 23, 2015**.

DONE and ORDERED this 9th day of March, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE